EDSON KEITH, *et al.*, V. NATHAN STETTER.

1. ATTACHMENT, *Erroneously Dissolved.* Where an affidavit for attachment fully and positively states three separate statutory grounds therefor, and on a motion to dissolve such attachment testimony is introduced challenging the truth of two of such alleged grounds, but none questioning the third, *held,* that it was error to dissolve the attachment because the unchallenged, undisputed statutory ground for attachment was sufficient to sustain it.

2. RESIDENCE; *Presumption; Non-Residence.* A residence once shown to have been established is presumed to continue until it is clearly shown to have been abandoned. The residence of a man having a family which he maintains is *prima facie* where that family dwells. A man's acts and conduct are more to be considered in determining the question of a change of residence than any mere declaration of intent; and when the question of residence or non-residence is doubtful, the question should be so determined as will best secure the rights of creditors and others having dealings with such party. And *held,* that upon the facts as they appeared in this case it must be adjudged that defendant was at the time of the attachment a non-resident of the state.

*Error from Atchison District Court.*

ACTION brought by *Edson Keith* and two others, partners as Keith Brothers, against *N. Stetter,* to recover upon an open account for $487.15. The grounds stated in the affidavit for the writ of attachment issued at the beginning of the action are:

"That the defendant is a non-resident of the state of Kansas; that he is about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors; that he has property or credits which he conceals; that he has assigned, removed or disposed of, or is about to dispose of his property, or a part thereof, with the intent to hinder and delay his creditors, and that he fraudulently contracted the debt for which suit is brought."

May 20, 1880, the court sustained the defendant's motion to dissolve the attachment, and made an order accordingly, which ruling and order the plaintiffs have brought to this court for review. Other facts are stated in the opinion.

*H. M. Jackson*, and *Smith & Solomon*, for plaintiffs in error.

*W. W. Guthrie*, and *Everest & Waggener*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This is a proceeding to review an order of the district court dissolving an attachment. We might fairly dispose of this case in a few words, and on a single question. The affidavit for attachment among other grounds alleged that the debt was fraudulently contracted. On the motion to dissolve, not a syllable of testimony is offered tending to disprove this. The circumstances under which the debt was contracted do not appear — are not even referred to. Hence the sworn charge in the original affidavit remains uncontradicted, and that sustains the attachment and compels a reversal of the order of the district court. And this point is made by counsel, and demands our attention. (*Reyburn v. Brackett*, 2 Kas. 227.) But justice to counsel and the interests involved compel a notice of other matters in the case. We are informed that several suits were commenced against this defendant in error, defendant below, and that they are waiting the disposition of this case. Hence some of the litigated and disputed matters should receive our notice.

Two principal questions exist, which are in dispute, and around which the testimony circles. This testimony being all of it by affidavit or deposition, comes before this court very much as before the district court — neither sees the witnesses; and while weight should be given to the conclusions of the district court, yet it is not as though that court saw the witnesses and measured the men. (*Robinson v. Melvin*, 14 Kas. 484; *Shedd v. McConnell*, 18 Kas. 594.) The two grounds of attachment which are challenged are non-residence, and a disposition of property with intent to hinder, delay and defraud creditors. These are undisputed facts. Defendant in 1869 commenced business in Atchison. This business continued until December 20, 1879. Upon that day mortgages for sev-

eral thousands of dollars were placed upon the goods in the store at Atchison, one to Moses Wallack, one to the First National Bank of Atchison, and one to Everest & Waggener, attorneys at law. Some months before this, branch stores had been opened—one at Emporia and one at Newton. These branch stores were supplied from the central establishment. The same day of these mortgages a telegram was sent to the party in charge of the store at Newton to come immediately to Emporia. On the night train Max. N. Stetter, son of defendant and his general manager, went to Emporia, and there made a sale of the two stocks at Emporia and Newton to the clerk in charge of the store at Emporia for $9,000, $1,500 of which was paid by receipting an account for salary as clerk, and the balance in notes, secured by a chattel mortgage on the goods sold. The terms of this sale were agreed upon before the arrival of the clerk in charge of the Newton store. The stocks in the three stores were worth about $30,000. Defendant's family consisted of himself, wife, and an unmarried daughter. For many years they had resided and kept house in New York city. Until 1878 he had never been in Atchison, the business being in charge of Max. N. Stetter. In April, 1878, he came to Atchison, and remained till October, 1879. He then returned to New York, and was there at the time of the mortgages, sale, and attachments. He was a man of seventy-four years of age, and his wife some years older. During his stay in Atchison he lived with his son, having brought no furniture with him, nothing but a trunk and a satchel. Some four or five years ago a married daughter and her husband came to live with him in the house he rented and occupied in New York city. The lease of this house was in his name, and so continued until after the attachments; the furniture, or most of it, was his. Part of the time of his absence it is probable that his son-in-law kept house, and his wife and daughter boarded with them. The testimony as to the exact family arrangements of the household in New York was, to say the least, indefinite and unsatisfactory. He says that when he came to Atchison in April,

1878, he came intending to live there and to bring his family out as soon as the health of his wife and daughter permitted, and that when he returned to New York in October, 1879, it was for the purpose of moving them to Atchison. But they have never yet been moved. His son Max N. testified that it was his father's intention to move the family to Atchison and to make that their home, and that he went to New York for that purpose. Other witnesses testified that they understood that that was his intention. But the bill of sale of the goods at Emporia and Newton, executed by Max N. two days after the attachment, recites the sale as made by N. Stetter, of New York city.

Now it is familiar law that a residence once established is presumed to continue until it is clearly shown to have been changed. "We find it laid down in all the authorities that an original domicile, whether of birth or otherwise, if once fixed clings closely, and we conceive that it can never be changed by the mere intent of the party. The act must accompany and verify the intent. As the homely proverb asserts that 'Actions speak louder than words,' actions must corroborate and confirm the words. 'The fact and the intent must concur.'" (*Hart v. Horn*, 4 Kas. 239.) Doubtless residence and domicile are not absolutely synonymous terms, but evidently from the facts of that case domicile was used in the sense and as the equivalent of residence. And in so far as there may be any distinction between the two terms, it is not a distinction affecting the rule as stated.

Defendant's residence confessedly was fixed and established for many years in New York. This while his business was carried on in Atchison. Again, the residence of a man who has a family which he maintains, and which has an established home, is *prima facie* with that family. Wherever he locates that family in anything like a fixed and permanent residence, it is presumptively his chosen place of residence. Wherever he may go for business or pleasure, he resides at home, and home is where the family dwell. Now defendant's family dwelt in New York; they were established there.

They had never been in this state. Their household goods had never been moved.

Suppose the situation had been reversed — the family living in Kansas, and the defendant absent in New York for a year and a half on business and then returning and being with them for nearly three months: would there be much doubt as to his residence in Kansas? Would service of process upon him at the family dwelling during his absence have been worthless? Could he not have claimed the benefit of the exemption law as to personal property? Or would the claim have been defeated by proof of his intent to make New York his home, and move his family as soon as their health would permit?

Again, while a man's intentions are securely lodged in the recesses of his own heart, and he may safely assert that he intends one thing or another, providing neither is absolutely inconsistent with his acts, yet by reason of this secresy of intention arises the familiar rule that men must be judged by their conduct rather than by their declarations. The conduct of the defendant and his son points to a continued residence in New York. While his business was in Atchison, yet that business remained for nearly eight years without his personal supervision, and in the charge of his son. When finally he came out to look after it, he was an old man, still ignorant of the English language, bringing nothing, boarding with his son, and making no arrangements for removing his family. After a long stay, he returns to his family in New York, and there remains for nearly three months before these suits. During this time nothing is being done toward a removal. His son and business manager, in a formal business document, speaks of him as "of the city of New York." Can these concurring facts be all broken down by his simple declaration that he intended to make Atchison his residence, and that his return to New York was for the purpose of removing his family?

And again, when a man voluntarily places himself in a position where all that is visible and tangible in his life is

consistent with either residence or non-residence, the actual fact as to which depends solely upon his own intent, and there is that in his business transactions which is strongly indicative of fraud, it is the duty of the court to so hold as will best secure and protect the rights of creditors and others having dealings with such party. Whenever the issue comes squarely between a party's secret purpose and the security of creditors, the latter should control. A party is not wronged if his creditors are paid out of his property. If this defendant had said that his intent was to continue his residence in New York, there is scarcely a syllable of testimony which would discredit it. And the only doubt as to that residence is his assertion that he intended to make Atchison his home. The transactions on the 20th and 22d of December are, it will be conceded by all, to say the least suspicious. They suggest fraud. They cast doubt on the integrity of defendant and his business manager, and under those circumstances we think it right to give little credence to his statement as to his intentions and place large reliance on his acts and conduct. There are some minor matters which we have not noticed. Our conclusion is, that the defendant was a nonresident, and for this reason also the attachment should have been sustained. Into a discussion of the other question, that of a fraudulent disposition of property, we have concluded that, as it is unnecessary, it is perhaps best for us not to enter. We may say, however, that we consider the testimony on that point sufficient to sustain the attachment.

The order of the district court will be reversed, and the case remanded with instructions to overrule the motion to dissolve the attachment.

HORTON, C. J., concurring.

VALENTINE, J.: I concur with my brethren in reversing the order of the court below, sustaining the motion to dissolve the attachment; but I do not concur in overturning the decision of the court below, holding that the defendant N. Stetter was not a non-resident of the state of Kansas. A

preponderance of the evidence introduced on the hearing of the motion showed that the defendant was a resident of Kansas and of the city of Atchison, and the court below so found and so decided; and all presumptions, *if we must resort to presumptions*, are in favor of the correctness of the decision of the court below. The defendant testified positively that he was a resident of Atchison, Kansas, and the testimony of several of the other witnesses tended to corroborate his testimony. It is true that all this evidence may be false, but we have no means of knowing that it is false. None of the witnesses were directly impeached, and from anything appearing in the case, they may have all testified to the exact truth upon this subject. That is, from the facts proved it is not improbable, but it is reasonable and probable, that the defendant was a resident of the city of Atchison, Kansas. All his business was carried on in Kansas, and all his property, except a little household furniture, was also in Kansas. His principal business was carried on in Atchison, but he also carried on business in Emporia and in Newton; and he did not carry on any business anywhere else in the world. From sometime in April, 1878, up to about the first of October, 1879, he lived continuously in Atchison. He then went back to New York city, his former home, with the intention, as he says, to make a short visit, and then to return to Kansas. He had no intention, as he claims and testifies, to remain long away from Kansas; and he did in fact return to Kansas and to Atchison, about December 27, 1879, where he was still living when this motion was heard and decided by the court below, which was May 20, 1880. He lived with his son, Max N. Stetter, in Atchison. But it is said that his family remained in New York city, his former home. This is true; but his family consisted of only a wife, who was 82 years of age, and very feeble and frail, and an unmarried daughter (his only unmarried child), who remained with her mother, evidently to take care of her. His wife and daughter lived in a rented house or in a part of a rented house in New York city, and he supported them there, al-

though he says that he intended to remove them to Kansas whenever his wife became able (if she ever should) to endure the journey. There are some other facts tending to prove and disprove the defendant's residence in Kansas, but I do not think that it is necessary to state them. I think that the preponderance of the evidence proves that the defendant was a resident of Kansas at the time the attachment in this case was issued and the court below found that he was; and we should not indulge too readily in presumptions for the purpose of overturning the findings and decisions of the court below.

The term "residence" is defined by subdivisions 23 and 24 of section 1 of chapter 104 of the general statutes, (Comp. Laws of 1879, p. 920.)