GEORGE GARLINGHOUSE v. P. I. MULVANE *et al.*

1. ATTACHMENT — *Non-Residence of Defendant—Evidence.* Where the sole ground for an attachment is that the defendant is a non-resident of the state of Kansas, and on a motion to discharge the attachment it is shown that the property attached had been occupied as a homestead for more than twelve years by the defendant and his family, and afterward the defendant's wife becomes sick, and is advised by the plaintiffs, as her physicians, to go south for her health, and under such advice defendant goes to Galveston, Texas, with his wife, leaving their house and household goods in charge of other members of the family, and afterward the goods are stored on the premises and the house rented, and at the time of leaving and going south it was and still is, the intention of the defendant to return as soon as his wife's health will permit, and did not and does not intend to re-

Statement of the Case.

main away permanently, and such property is their only homestead and residence; where such statements are uncontradicted, except by the affidavit for attachment, *held*, that it is error for the court to refuse to dissolve the attachment.

2. ———— *Discharge—Property Not Exempt.* Where the non-residence of the defendant is the only ground for attachment, and on the hearing of the motion to discharge such attachment it is clearly shown that the attached property is the residence and homestead of the defendant; *held*, error for the court to overrule the motion to discharge the attachment, although a part of the property attached may not be exempt.

### *Error from Shawnee District Court.*

ACTION brought by the defendants in error to recover on a promissory note of $200 against the plaintiff in error. At the commencement of the action, an affidavit for attachment was filed, and an order of attachment issued, which was levied upon lots numbers 465 and 467, on Kansas avenue, South Topeka, as the property of the plaintiff in error. The only ground alleged in the affidavit for attachment was, that the defendant was a non-resident of the state of Kansas. At the trial the defendant below moved the court to discharge the attachment, for the reasons that he was a resident of the state of Kansas and that the property attached was the homestead of the defendant and his family. Trial at the April term, 1887. The motion to discharge the attachment was overruled, and judgment rendered against the defendant for the amount claimed. The court made special findings of fact and conclusions of law thereon. Such of the findings and conclusions as relate to the non-residence of the defendant and the abandonment of the homestead are as follows:

"5. On the — day of ——, 1884, defendant's family consisted of himself and wife only, and for a long time prior to said last-named date the defendant's wife was sick and under the medical treatment of the plaintiffs as her physicians. On said — day of ——, 1884, the defendant was advised by Dr. P. I. Mulvane, one of the plaintiffs, that his wife should be taken south for the purpose of improving her health, and, acting upon the advice of said Dr. P. I. Mulvane with respect to his wife's health, the defendant broke up housekeep-

ing, and put his household goods in the care and keeping of said S. F. Garlinghouse, who stored them in the broom factory, on said lot No. 467, and the defendant and his wife left the state of Kansas and stopped a short time at Hot Springs, Arkansas, and then went to Galveston, in the state of Texas, where defendant engaged in business as a book canvasser, where he and his wife have since lived, and were living at the commencement of this action, and the issue. and levy of the order of attachment. The defendant and his wife have been absent from this state ever since they broke up house-keeping and went to Hot Springs, as aforesaid.

"6. Subsequently to the defendant's breaking up house-keeping and going to Hot Springs, and thence to Galveston, Texas, with his wife, the said lot 465 was leased and rented to one F. B. Norris by the defendant, and said Norris occupied and used the dwelling-house thereon, with his family, as their residence, and was so occupying and using the same, and paying rent therefor to defendant, at the commencement of this action and the execution by the sheriff of the order of attachment issued in this action.

"7. Defendant and his wife left this state and went to live at Galveston, in the state of Texas, on account of his wife's ill-health, and at the time of the commencement of this action and the levy of said attachment they were living at Galveston, and defendant was engaged in business as aforesaid, with the intention of remaining in Galveston, or somewhere in the south, until his wife's health is recovered, and not to return to this state until his wife's health is recovered.

"8. At the time defendant left this state, and at the date of the levy of said attachment, and at all other times since leaving this state, defendant has had no fixed intention of returning to this state to live, or to occupy said lots, or any part thereof, as his residence, except as contingent upon the recovery of his wife's health."

"CONCLUSIONS OF LAW.

"1. The said George Garlinghouse, at the time of the commencement of this action and the levy of the attachment, was a non-resident of the state of Kansas within the meaning of the act of civil procedure.

"2. At the time of the commencement of this action and the levy of the said attachment, the real estate attached was not in law the homestead of defendant George Garlinghouse, and was and is subject to levy and sale."

The defendant brings the case here.

*Jetmore & Son,* for plaintiff in error.

*J. W. Campbell,* for defendants in error.

Opinion by CLOGSTON, C.: Two questions are presented for examination as errors: First, that the conclusions of law are not supported by the findings of the court; and second, that the conclusions of fact are inconsistent with and not supported by the evidence. The undisputed facts show that the defendant was a resident of the state of Kansas, residing upon the lots in controversy as the home of himself and family, from 1872 until 1884, at which time defendant's wife was an invalid, and was under the care and treatment of the plaintiffs as her physicians, and that upon their recommendation she was taken by her husband to Hot Springs, Arkansas, and elsewhere in the south, for her health; that at the time of the levy of the attachment they were residing in Galveston, Texas; that at the time of leaving Kansas they left their furniture, household goods and fixtures in their house, and the goods continued to remain there in the care of a son and daughter for more than one year, after which the goods were stored on the lot in a broom factory, and the house rented, and the rent received by the defendant. The object of going away was for the purpose of seeking to benefit the health of the defendant's wife. No permanent residence elsewhere was intended. The findings of fact by the court show that as soon as his wife's health improved, he expected to return and occupy the property as his home. This finding of fact was made upon the uncontradicted testimony of the defendant and the defendant's son. The defendant testified that he was a resident of South Topeka, Kansas; that the property attached was his homestead; that he had no other homestead; that he intended to return to it just as soon as the state of his wife's health would permit; and that it was never his intention to remain away permanently, but to return as soon as the circumstances would allow. His son testified that his father went away for his mother's health, under advice of plaintiffs, and that he in-

tended to return and not to remain away permanently; that the last letter he had received from his mother informed him that she was getting better, and that she expected to return.

It has been the policy adopted in Kansas that the homestead and exemption laws should be liberally construed, and in the light of that policy this case must be viewed. (*Edwards v. Fry*, 9 Kas. 425; *Gilworth v. Cody*, 21 id. 705.) Where it is once shown that a residence has been established, such residence is presumed to continue until the contrary is shown. (*Keith v. Stetter*, 25 Kas. 100; *Dupuy v. Wurtz*, 53 N. Y. 556.) The court found that the defendant was a resident of Kansas from 1872 until 1884, and such residence must be presumed to have continued until the contrary is clearly shown. The defendant himself testified that he was still a resident here, although temporarily absent, and that he intended to return and not to permanently remain away. No evidence was offered to contradict this statement. It has been held by this court in *Hixon v. George*, 18 Kas. 253, that a temporary residence elsewhere, or a temporary absence from the state of the debtor and his family, where there is an intention to return, is not sufficient of itself to lose a residence or a homestead here. Where a residence is once established, it requires two conditions or things to destroy it; first, a removal; second, an intention not to return. An intention to go away and never to return will not destroy the residence; neither will the actual removal from the state without the intention to remain away and not return. (*Adams v. Evans*, 19 Kas. 174; *Ballinger v. Lantier*, 15 id. 608.) The intention of a party must be determined by the surrounding circumstances. (*Dupuy v. Wurtz*, 53 N. Y. 556.) The court might disbelieve the statement of a party as to his intentions, and yet find the same state of facts from surrounding circumstances. Where one goes away leaving behind him part of his family, his household goods, his home, and the circumstances under which he goes are such as to indicate only a temporary absence, such facts, coupled with the statement of his intention to return, uncontradicted by other evidence, is conclusive and binding, and must not be

disregarded; and where these facts exist, the finding of the court to the contrary cannot be upheld.

The grounds for the attachment being the non-residence of the defendant, if it is found that that ground is untrue, it is then immaterial to inquire further; for if the ground for the attachment was not true, it made no difference whether the property was a homestead and therefore exempt, or not. The attachment must stand or fall on the grounds alleged in the affidavit, and where it is once found that those grounds are not true the attachment must fall, even if afterward the property might be subject to the judgment. We therefore will not determine the question of how much of the property in question was a part of the homestead of the defendant.

We are of the opinion that the conclusions of law found by the court are not supported by the findings of fact, and that some of the findings of fact are not supported by the evidence.

We therefore recommend that the cause be remanded, with instructions to the court below to sustain the motion, and discharge the attachment.

By the Court: It is so ordered.

All the Justices concurring.