HIRAM F. HATCH, *Receiver*, v. S. C. SMITH.

**No. 213.**

RESIDENCE—*in determining, conduct is of more importance than declaration of intent.* A residence once shown to have been established is presumed to continue until it is clearly shown to have been abandoned. The residence of a man having a family which he maintains, is *prima facie* where that family dwells. A man's acts and conduct are more to be considered in determining the question of a change of residence than any mere declaration of intent; and when the question of residence or non-residence is doubtful, the question should be so determined as will best secure the rights of creditors and others having dealings with such party. *Keith v. Stetter*, 25 Kan. 100.

Error from Cowley District Court. Hon. M. G. Troup, Judge. Opinion filed July 21, 1897. *Reversed.*

*Stanley & Vermilion*, for plaintiff in error.

No appearance for defendant in error.

SCHOONOVER, J. In this case an attachment affidavit was filed alleging that the defendant was a non-resident of the state; an order of attachment was issued, a stock of groceries levied upon, and a motion filed by defendant to discharge the attachment for the reason that the grounds of attachment stated in the affidavit of plaintiff were untrue. The motion was tried before the judge. No evidence was introduced except in the form of affidavits and depositions, all of which are contained in the record. The court found for the defendant, and the plaintiff brings the case here for review.

The question presented is whether or not the defendant in error, S. C. Smith, was at the time the attachment was issued — June 13, 1892 — a non-resident of the State of Kansas. It appears from the testimony that, at the time the attachment was issued

646       HATCH v. SMITH.

S. Dept.       Opinion.   Schoonover, J.       6 Kan. App.

and for many years prior thereto, the defendant had a wife and family residing in Jamestown, N. Y., in a large brick dwelling with twelve or fourteen rooms, well furnished. The door plate bore the name, " S. C. Smith."

This residence was owned by Julia A. Smith, wife of defendant in error. The defendant had been doing business in Arkansas City at different times since 1886 ; he built the " Gladstone Hotel," and, under the firm name of S. C. Smith & Co., the defendant personally assisted as a member of the firm in conducting the business of said hotel. During all this time and until after the goods attached in this action were purchased — March 4, 1892 — by Sarah U. Miller, daughter of defendant, he continued to claim Jamestown, N. Y., as his place of residence.

In the purchase of the goods from Frank & Homer, the defendant in error acted as the attorney in fact for his daughter, Sarah U. Miller. On the thirtieth day of April, 1892, Sarah U. Miller sold the goods attached, to her mother, Julia A. Smith. In this transaction the defendant in error acted as the agent of his wife, Julia A. Smith. In relation to the last transaction Julia A. Smith testified as follows :

" I don't know of my own knowledge what the consideration was. Mr. Smith did the business. I think I did not tell him to buy this stock of groceries for me. Mr. Smith said when he went to Arkansas City in April that he was going to take charge of these goods. I don't think that he told me how he was to be paid for his services. He did not tell me of any other means of livelihood there. I did n't understand that Mrs. Miller was to transfer the goods to me, when they were shipped West."

It appears that the defendant in error was in possession and had absolute control of these goods at all

times, and that from a part of the proceeds he purchased a business property in Arkansas City in his wife's name; but so far as the record discloses the purchase was without her authority, knowledge, or consent.

No steps were ever taken by the defendant in error to move his family from New York to Kansas. The only evidence is found in the declarations of the defendant in error and his wife, in the month of April, after the purchase of these goods by the daughter, that they intended to make their home in Arkansas City. These declarations were made to several parties whose affidavits appear in the record. In this relation the defendant testifies as follows :

"Ques. How long have you been a resident of Arkansas City, Cowley County, Kansas? Ans. From the last of April.

"Q. Where did you live prior thereto? A. Jamestown, N. Y."

CROSS-EXAMINATION.

"Q. Have you made any arrangements to dispose of your house there, either to sell or to rent it? A. No.

"Q. Any arrangements for moving your goods from there here—your household goods? A. What we need to, when the time comes.

"Q. Have you as yet made any arrangements for moving? A. Yes, by talking, that's all.

"Q. Whom did you talk with? A. My wife. She says she will come the first of September.

"Q. Does she say she will bring all her household goods with her? A. No, not all of them.

"Q. Expect to bring only a part? A. Will sell anything we do not want.

"Q. Have you had a talk of that kind? A. No, I do not know as we did; but that is what we will do.

"Q. How do you know, if they belong to your wife? You cannot very well sell them without talking to

648 HATCH v. SMITH.

| S. Dept. | Opinion. Schoonover, J. | 6 Kan. App. |

your wife, can you? A. Well, I would advise her to do it. I do not own the things, of course.

"Q. But you have made no definite arrangements for making any removal, have you? A. No, sir.

"Q. Except this talk that you speak of? A. That is all."

The bill of sale from the daughter, S. U. Miller, made April 30, 1892, while S. C. Smith was acting as the agent of his wife, Julia A. Smith, is as follows:

"OTOE, Oklahoma Territory, April 30, 1892.

"For valuable consideration, I hereby sell, transfer and assign all my right, title and interest to all goods, merchandise and fixtures to Julia A. Smith, Jamestown, N. Y., being the same goods bought of Frank & Homer as per a certain contract made by S. C. Smith, attorney, and Frank & Homer, dated March 4, '92, and according to invoice made by Wm. Frank and S. C. Smith.

"Witness my hand this thirtieth day of April, A. D. 1892.                           S. U. MILLER."

Julia A. Smith, in her deposition of June 20, 1892, says:

"I reside in Jamestown, New York. I should say my husband resides in Arkansas City, Kansas. Mr. Smith and myself were married in October, 1852, and have lived together as husband and wife and always expect to."

It is clear from this evidence and recital in the bill of sale that the wife of the defendant still resides in the home occupied by the family in Jamestown, N. Y., and that no definite arrangement of any kind has ever been made to move the family or the household goods from New York to Kansas. There has been no act upon the part of the defendant in error, except the purchase of a business property, to accompany and verify the intent.

A residence once established is presumed to con-

tinue until it is clearly shown to have been changed. This presumption cannot be overcome by "mere talk;" the fact and the intent must concur.

The term "residence" is construed by our statute to mean the place adopted by a person as his place of habitation, and to which whenever he is absent he has the intention of returning."

In determining the residence of a voter our statute (¶ 2668, Gen. Stat. 1889) provides : "*Fifth*, the place where a married man's family resides shall be considered and held to be his residence."

In the case of *Adams v. Evans* ( 19 Kan. 174 ), it is held that, "in order to effect a change of residence, there must exist both the intention to change, and the fact of removal. Neither is sufficient alone." Applying to the evidence in this case the rule given by Justices Brewer and Horton in the case of *Keith v. Stetter* (25 Kan. 100), the order of the District Court must be reversed.

"A residence once shown to have been established is presumed to continue until it is clearly shown to have been abandoned. The residence of a man having a family which he maintains is *prima facie* where that family dwells. A man's acts and conduct are more to be considered in determining the question of a change of residence than any mere declaration of intent; and when the question of residence or nonresidence is doubtful, the question should be so determined as will best secure the rights of creditors and others having dealings with such party."

The order of the District Court will be reversed, and the case remanded with instruction to overrule the motion to dissolve the attachment.

No. 228, Hiram F. Hatch, Receiver, v. S. C. Smith, involving substantially the same questions upon

substantially the same facts, was reversed upon the authority of the above case. The court quoted from *Hegwer v. Kiff & Co.* (31 Kan. 441), to the effect that testimony contained in affidavits will be reviewed in this court.