The Palmer Oil and Gas Company v. George W. Parish.

No. 11,390. (59 Pac. 640.)

1. Homestead and Exemptions—*Temporary Absence of Owner.* An owner of property occupied as a homestead who has under consideration a change of residence, and who, with his wife, starts out in an effort to find a new home, but with the intention to return and continue to occupy the homestead if he cannot make a satisfactory exchange, and who leaves members of the family at the home, as well as household effects, stock, and other property, does not thereby forfeit his homestead right, nor will the property be divested of the homestead character until there is a permanent removal with an intention not to return to the same.

2. —— *Case Followed.* The case of *Land Co. v. Gas Co.*, 43 Kan. 518, 23 Pac. 630, followed.

Error from Allen district court; L. Stillwell, judge. Opinion filed January 6, 1900. Affirmed.

*Oscar Foust & Son, A. H. Campbell,* and *C. E. Benton,* for plaintiff in error.

*J. F. Thompson,* for defendant in error.

The opinion of the court was delivered by

Johnston, J.: This proceeding involves a question of homestead right. John W. Boatwright owned, and with his wife occupied, as a homestead a quarter-section of land in Allen county. On April 5, 1894, Boatwright executed to George A. Bowlus & Co. a lease, giving them the right to enter upon the land and operate for oil, gas and minerals for a term of ten years, and their rights under the lease were subsequently assigned to the Palmer Oil and Gas Company. The wife of Boatwright did not join in the execution of the lease, and has never consented that it should be made. In October, 1894, Boatwright and wife conveyed the land to Mary A. Parish, and she in turn

conveyed it to George W. Parish, who, shortly afterward, instituted this proceeding to declare the lease invalid and to quiet his title as against those claiming under it. The controlling question in the case is whether Boatwright and wife occupied the land as a homestead at the time the lease was executed — a question mainly of fact, and it has been determined adversely to the claim of the company.

The lease was executed when Boatwright was absent from the land and while he was in Missouri, but it is claimed to have been a temporary absence, or, at least, that there was no abandonment of the homestead in Kansas. It appears that Boatwright and wife, in January, 1894, went to Fort Scott, where they remained for a number of weeks, and from there they went to Nevada, Mo. He placed his Kansas property in the hands of real-estate agents and endeavored to sell or exchange it for other lands. He left at the Kansas home, however, two of his sons, a a portion of his household goods, some hogs, cattle, and horses, as well as farming implements. Both of the sons had been living with them as part of the family, and in that year the cultivated land was rented to the older one, and the pasture land was reserved for the stock which he left there. Some of the cattle on the farm were sold during the summer and fall of 1894, and some of them remained on the place until March, 1895. The other son, who was only fifteen years of age, and who had always lived at home, continued to occupy the house with the older brother until May, 1894, when he rejoined his father and mother in Missouri. Some of the horses and hogs left on the place remained there until the spring of 1895.

Boatwright frankly stated in his testimony that when he went down into Missouri he desired to secure

land there and cont⎯ ⎯ated moving there in case he could trade his Kansas land for property in Missouri. He further stated, however, that it was his purpose to return and continue the occupancy of the Kansas land unless he could trade it. In answer to another question he said : "I did not consider myself permanently located until I got land of my own. I mean by that, I did not consider myself permanently located until I traded that land over there for other land, or went back to it." His wife testified that she considered the Allen county land their homestead until they traded it to Parish in October, 1894. She reiterated the statement of her husband that they hoped and endeavored to dispose of their Kansas land, but that she considered it her home until it was traded off. They did not purchase any other property or acquire a homestead elsewhere until the land was disposed of in October, 1894, while, as we have seen, the lease was executed on April 5, 1894. Had the land been divested of its homestead character at that time?

That the Boatwrights had a homestead in the property until January, 1894, is conceded. Did they abandon or lose it prior to the execution of the lease in 1894 because they had under consideration a change of residence, and were looking for an opportunity to dispose of the homestead? "A residence once shown to have been established is presumed to continue until it is clearly shown to have been abandoned." (*Keith v. Stetter*, 25 Kan. 100.) To constitute an abandonment of a homestead there must be an attempt to abandon and an abandonment in fact. In *Garlinghouse v. Mulvane*, 40 Kan. 432, 19 Pac. 800, it was said that "where a residence is once established, it requires two conditions or things to destroy it : First, a removal ; second, an intention not to return." Ac-

cording to the testimony of Boatwright and wife, there was no permanent removal until months after the lease was executed, and they had not formed the intention not to return. Unless they disposed of the Kansas home, and there was no assurance of that, they expected to continue its occupancy as a homestead, and the absence of Boatwright and his wife can hardly be regarded as a permanent non-occupancy when some of their family were still in the home, and a portion of their household effects, their horses, cattle and farming implements were kept on the place until they established a home in Missouri. The fact that one has under consideration a change of residence, and is looking about in order to determine whether a satisfactory change can be made, will not operate to divest the property which he occupies of the homestead character, and he will not lose the homestead right until there is a removal with an intention not to return to the same. Applying the rules which obtain in determining homestead rights, we think the court correctly held that there had been no abandonment when the lease was executed.

Another contention is that the lease did not contemplate any interference with the homestead rights, and therefore that the joint consent of the husband and wife was not essential to its validity. It is claimed that the principal value placed on this lease was on account of the natural-gas privileges, but by the terms of the lease the lessee and its assigns were given the right to operate for oil, gas, and minerals. Even if it only contemplated the taking of natural gas from the land, it appears that it would be necessary to construct houses over the wells for machinery and other purposes, and a right-of-way over the land would be required to reach the wells and to carry the product

from them.   A lease contemplating such an occupancy so far interferes with the use of the homestead that the joint consent of the husband and wife is necessary to its validity.   ( *Land Co. v. Gas Co.*, 43 Kan. 518, 23 Pac. 630 ; *Gas Co. v. Land Co.*, 54 id. 533, 38 Pac. 790.)

The judgment of the district court will be affirmed.