# JULY TERM, 1905.

*PRESENT:*

Hon. WILLIAM A. JOHNSTON, Chief Justice.
Hon. EDWIN W. CUNNINGHAM,
Hon. ADRIAN L. GREENE,
Hon. ROUSSEAU A. BURCH,          } Justices.
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,
Hon. SILAS W. PORTER,

D. P. Elliott v. Parlin & Orendorff, *a Corporation.*

No. 13,995.    (81 Pac. 500.)

. SYLLABUS BY THE COURT.

1. Homesteads — *Attachment* — *Burden of Proving Abandonment.* When in an action an attachment is levied upon real estate that had, at a prior time, long been the homestead of the defendant, on the ground that the defendant has abandoned the homestead and become a non-resident of the state, and the defendant files a motion to dissolve the attachment, alleging that the grounds set forth in the affidavit for attachment are false and untrue, the burden of proof is on the plaintiff to establish, by positive and clear evidence, that the defendant, with his family, has abandoned the homestead and become a non-resident of the state. *Held,* that the evidence in this case does not establish these facts.

2. Foreign Corporations—*Sale—Delivery to Carrier—Instructions.* Where a non-resident corporation begins an action in this state, and the issue raised by answer whether the plaintiff has complied with certain provisions of the corporation laws of the state—section 1283 of the General Statutes of 1901—and the evidence shows that the plaintiff, at the time of the commencement of the action and for years prior thereto, had five men in its employ traveling over the state of Kansas and obtaining from implement dealers in this state contracts that provided that the title and right to possession of the goods shipped under the contract from Kansas City, Mo., to the dealer in Kansas should remain in the cor-

poration until paid for, it not being contemplated that they should be paid for until some time after the goods were received in Kansas, and the corporation thereafter sent agents to Kansas to settle and receive payment for the goods, it is error for the trial court to assume in the instructions that, although the dealer in Kansas contracted to, and did, pay the freight on the goods from Kansas City, Mo., the goods were delivered by the corporation to the carrier in Kansas City as the property of the dealer in Kansas.

3. ——— "*Doing Business*" *in this State*. Under the undisputed facts of this case the plaintiff corporation, at and prior to the commencement of this action, was doing business in the state of Kansas within the meaning of the corporation laws of the state.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed July 7, 1905. Reversed.

## STATEMENT.

THIS action was commenced in the district court of Shawnee county by the Parlin & Orendorff Company, a corporation organized under the laws of the state of Illinois, on notes executed and delivered to it at Rocky Ford, Colo., by Dye & Elliott, of which firm the defendant Elliott was a member. At the time the action was commenced an affidavit for an attachment was filed on the ground that the defendant was a non-resident of the state of Kansas, and the attachment was levied on real estate in the city of Topeka. The defendant answered, and also filed a motion to dissolve the attachment, asserting that the allegations of the affidavit for attachment were false and untrue, that in fact the defendant was a resident of the state of Kansas and the head of a family, and that the real estate attached was the homestead of himself and family. After a hearing, the evidence introduced being all in affidavits and depositions, the court denied the motion to dissolve the attachment. The action was tried upon its merits to a jury, under the instructions of the court, and a verdict was returned in favor of the plaintiff.

A motion for a new trial was denied, and judgment rendered for the plaintiff.  The defendant brings the case here for review.  The answer of the defendant alleged, among other things, that the plaintiff was a foreign corporation and had not complied with the laws of the state of Kansas by obtaining the certificate required by section 1283 of the General Statutes of 1901, and this allegation stands admitted.

*A. H. Case,* and *J. D. McFarland,* for plaintiff in error.

*Robert Stone, Park B. Pulsifer,* and *Dwight M. Smith,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.:  The evidence upon the hearing of the motion to dissolve the attachment being all in writing, we have carefully examined it, and cannot reach the conclusion thereon that the trial court did.  The grounds for the attachment were denied under oath, which placed the burden of sustaining the attachment upon the plaintiff.  While there is some evidence tending to show that the defendant, with his family, had abandoned his homestead and residence in Topeka, Kan., and had acquired a residence in Enid, Okla., there is very much evidence to the contrary.  Indeed, the entire effect of the evidence impresses us with the idea that the defendant was unsettled at the time of the commencement of the action; that while he and his family were absent from the state they contemplated returning and again occupying the property attached as their home.  At least it must be said that the plaintiff failed clearly to establish the alleged fact of the abandonment of the homestead and change of residence.

The plaintiff in error complains of the ruling of the court excluding the affidavit of Mrs. Elliott on the hearing of the motion to dissolve.  Under the deci-

sions of this court Mrs. Elliott had a joint interest in the property, if it was their homestead, and she might on application have been made a party defendant, but this was not done. Hence she did not come within the exception named in section 4771 of the General Statutes of 1901, which, so far as applicable to this case, renders the wife incompetent to testify for or against her husband except when they are joint parties and have a joint interest in the action. She was not a joint party.

By numerous decisions of this court, particularly *Palmer v. Parish,* 61 Kan. 311, 59 Pac. 640, and *Garlinghouse v. Mulvane,* 40 id. 428, 19 Pac. 798, it has been held that the homestead-exemption laws of this state are to be liberally construed in favor of the homestead, and that the homestead can be appropriated for the payment of debts only upon clear and positive evidence of its abandonment as such. It is undisputed that the defendant and his family occupied the attached property as a homestead for many years, during a portion of which time the defendant was in business in Colorado, and that during the time he was in business in Colorado his family occupied the homestead; that his alleged change of residence to Oklahoma was only comparatively a short time before the commencement of the action; that the homestead had been rented only from month to month, for the reason that the defendant and his family might return at any time; and that some of their household goods were left in the house. Although the defendant had offered the homestead for sale, and had tentatively considered acquiring a home in Oklahoma in case he should be able to sell the homestead, there had been nothing in that line accomplished, and no home had been acquired elsewhere. The court erred in denying the motion to dissolve the attachment.

Upon the trial the court instructed the jury relative

to the right of the plaintiff to maintain the action as
follows:

"It is a little difficult to explain in detail to you what
would constitute a doing of business within the state.
The court could possibly do that better by a simple
illustration.    It is undisputed in this case that the
plaintiff is engaged in the manufacturing and selling
of farming implements.    Now, if the plaintiff had a
place of business in this state, sent its goods here, had
some person in charge of that branch house, so to
speak, and was there selling goods, that would consti-
tute a doing of business within this state within the
meaning of our corporation law; and if the plaintiff
had agents employed to solicit orders in this state, and
the agents had authority to make contracts with the
persons with whom they transacted business in such
way that the contract became final, and was not sub-
ject to review by the authorities of the plaintiff com-
pany in the state of Missouri, but that when the order
was taken it became a completed contract or transac-
tion, except as to filling the order, then I instruct you
that that would constitute the doing of business within
the state, because the giving of the order, and the ac-
ceptance of it by the agent, would make a completed
contract, and therefore would constitute the doing of
business within the state in the meaning of our cor-
poration law.

"But if you believe from the evidence in this case
that the plaintiff was a foreign corporation, having its
domicil in the state of Illinois; that it had a branch
place of business in Kansas City, Mo.; that it sent out
its agents through this state to solicit orders; that the
orders, when taken, were subject to approval or rejec-
tion by the officers or agents of plaintiff company at
its place of business at Kansas City, Mo.; that the
order was not binding upon the company until it had
been approved by such officers or agents at the office
of the company in Missouri, and upon its approval the
goods were then delivered to the common carrier as
the goods of the purchaser, then I instruct you that
that would not be the doing of business in the state of
Kansas within the meaning of our corporation law;
and the reason for that is that a contract of that kind
would be a Missouri contract, and not a Kansas con-
tract.    If the contract was entered into in the state

of Missouri, completed there, and the goods delivered upon the cars as the goods of the purchaser, then that is a Missouri transaction, and not a Kansas transaction. Or if persons living in Kansas should go to the plaintiff's place of busines in Kansas City, and there make contracts with the plaintiff through its agents for the shipment of goods, and under the arrangement the goods were to be delivered on the cars at Kansas City as the goods of the purchaser under the contract, then that would be a Missouri transaction, and would not constitute the doing of business within the state of Kansas.

"Now, it is for you to say from the evidence in this case whether or not the plaintiff was doing business in the state of Kansas at the time of the commencement of this action, and had been for some time prior thereto."

It is in evidence that the plaintiff was a corporation organized under the laws of the state of Illinois to engage in manufacturing agricultural implements in that state; that it had a branch house in Kansas City, Mo., in charge of an officer or managing agent, for the purpose of distributing and selling its goods; and that at the commencement of the action and for several years prior thereto it had in its employ five men, whose residences are not stated, traveling over the state of Kansas to secure orders from implement dealers of the state, which were generally signed by the dealers at their places of business in the state and directed the shipment of certain specified implements from Kansas City, Mo. These orders or contracts were on a printed form, one of which was introduced in evidence, and it was proved by the plaintiff below that the same form had been used by the company for a number of years. Among the conditions of the contract, the blanks in which were to be filled out in each case according to whether the dealer was an individual or a firm, are these:

"To secure the performance of this agreement on —— part, —— hereby further promise and agree

to hold in trust for the benefit, and subject to the order, of Parlin & Orendorff Company, its successors and assigns, all of the goods heretofore received from it, until ——— have paid in full, in cash, all ——— obligations of whatsoever nature now due, or yet to become due, to the said Parlin & Orendorff Company, and — do hereby further agree that the title and ownership to, and the right of possession of, all goods shipped by said Parlin & Orendorff Company, or received by ——— under this contract, shall remain vested in said Parlin & Orendorff Company, until the purchase-price therefor or any promissory notes given by ——— for such purchase-price shall have been fully paid by ———; and further to secure said Parlin & Orendorff Company we also hereby agree to keep the said goods insured to at least seventy-five per cent. of their value; loss, if any, payable to said Parlin & Orendorff Company as its interest may appear. . . .

"The party making this order hereby agrees that all future orders sent by ——— to Parlin & Orendorff Company, whether oral or in writing, and whether so expressed or not at the time the order is given, shall be governed by, and settlement for all goods shipped under such future orders shall be made in accordance with, the terms of this order. . . .

"This contract is not binding upon either party until acceptance is made and indorsed hereon by Parlin & Orendorff Company, a corporation, through its manager, at its office in Kansas City, Mo."

It is also in evidence, and uncontradicted, that when a dealer in Kansas made a settlement with the Parlin & Orendorff Company for goods so ordered and received an agent was sent from Kansas City to the place of business of the dealer in Kansas, with a statement of the account, and the accounts were checked up and the dealer paid to the agent the cash for the balance found due to the Parlin & Orendorff Company, or gave a note for the same, as the case might be. If notes were given, they were made payable in Kansas City, Mo., to the Parlin & Orendorff Company. If the agent and the dealer had any difficulty in the settlement, it was then subject to approval or disapproval by the house in Kansas City.

Can it be said as a proposition of law that goods shipped under the written contract, parts of which are herein quoted, were delivered to the carrier in Kansas City, Mo., as the property of the dealer in Kansas? Or can it be said as a proposition of law that the employer in sending men over the state of Kansas to make such contracts with implement dealers in the state is not doing business in the state of Kansas? Or can it be said that the sending of agents to the state of Kansas to settle accounts and to receive cash or promissory notes in settlement thereof is not doing business within the state of Kansas? We are obliged to answer all these questions in the negative. If these questions should not be answered affirmatively, as a question of law, they should have been submitted to the jury under proper instructions to be answered as questions of fact.

Paraphrasing the language of Mr. Justice Peckham in the case of *Lumbermen's Insurance Co. v. Meyer*, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810, we think it would be somewhat difficult for the plaintiff to describe what it was doing in Kansas, if it was not doing business therein, when sending its agents into the state to perform the various acts of adjustment provided for by its contracts and made necessary to carry them out. When the plaintiff shipped goods to dealers in Kansas under the contract, which we assume was good between the Parlin & Orendorff Company and the dealer, the title and right to possession of the goods remained in the company until the dealer paid for them; and, supposing that the dealer paid an agent of the company sent to Kansas for the purpose of making settlement of the claim, the payment being made in Kansas, was not the real sale of the goods made in Kansas? We think it was. The method of business of the plaintiff company seems to have been that it shipped its goods to the dealer ordering them with the understanding that the dealer should pay the freight,

hold the goods as the property of the company, sell the same, and have as his profit all that he received over and above the price at which the goods were listed to him.    If so the Kansas dealer was virtually the resident agent of the Parlin & Orendorff Company for the sale of its goods—that is, as between the company and the dealer, and we are not called upon to determine the effect of the contract as between the dealer and any third party or as between the company and any third party.

The instruction of the court assumed that the company delivered the goods to a carrier in Kansas City as the property of the dealer, which, under the terms of the contract, seems an erroneous assumption.    At any rate the instruction is too narrow, eliminating questions of law upon which the jury should have been instructed, and withdrawing from the consideration of the jury facts which it was proper for them to consider.

It is contended on the part of the defendant in error that section 1283 of the General Statutes of 1901 was repealed by chapter 150 of the Laws of 1903.    This is untenable; at least so far as this case is concerned. By the very terms of section 3 of chapter 150 the provisions of the chapter did not become operative until February, 1904, which was after the trial of this action.

The case is remanded, with instructions to sustain the motion to dissolve the attachment and to grant a new trial.

All the Justices concurring.