No. 44,280

O. S. Bellport, *Appellant*, v. W. E. Harder and Mildred O. Harder, *Appellees*.

(411 P. 2d 725)

Opinion filed March 5, 1966.

*Jack E. Dalton,* of Dodge City, argued the cause, and *J. J. Mangan,* also of Dodge City, was with him on the brief for the appellant.

*Ivan Krug,* of La Crosse, argued the cause, and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: The appellant herein seeks to impress a lien upon property claimed as a homestead by the appellees. Appeal has been duly perfected from an order of the trial court sustaining the appellees' motion to quash the second execution levied upon the property. The trial court after hearing evidence held the property was the appellees' homestead and therefore exempt from execution.

The controlling question presented on appeal is whether upon the evidence this court can say as a matter of law there was an abandonment of the homestead claimed by the appellees.

On October 1, 1958, after more than one year of litigation, O. S. Bellport (plaintiff-appellant herein) was awarded a judgment against W. E. Harder and Mildred O. Harder (defendants-appellees herein) in the amount of $2,150.72 with interest thereon at 6% per annum from October 1, 1958. The judgment was based upon two promissory notes given by the Harders to Bellport. Payment of these notes was secured by a mortgage on real estate other than that involved in this action. The judgment was entered in a fore-closure action in the district court of Rush County, Kansas, (Case No. 3976) and foreclosure of the mortgage was ordered, following which the mortgaged premises were sold. The net proceeds from the sale of this property were applied on Bellport's judgment in the sum of $146.61.

Subsequently, execution was issued and the sheriff of Rush County levied on the Harders' real property in question, which consisted of a home situated on a lot in La Crosse, Kansas. By reason of this levy the Harders brought a separate action against the sheriff of Rush County to enjoin the sale of this property, alleging that it was their homestead. Bellport intervened in the injunction action, and with permission of the court filed an answer denying that the real estate in question was the homestead of the Harders. With the issues thus framed, the matter was tried to the court on March 27, 1961, in the injunction action. In that action the trial court found the real property in question to be the homestead of the Harders and entered its order enjoining the sheriff from levying upon such property. *No appeal* was taken from this order.

More than two years later another execution was issued and the sheriff of Rush County levied upon the same property and adver-tised it to be sold on the 23rd day of December, 1963. The Harders

filed a motion to quash the writ of execution, setting out the findings and orders of the trial court entered in the injunction action against the sheriff, to the effect that the property in question was the homestead of the Harders and was exempt from execution under the Kansas Constitution and applicable statutes. In their motion to quash the Harders alleged that such judgment had not been set aside or appealed from; that no execution had been issued since the 27th day of March, 1961, until on or about the 21st day of November, 1963; that on or about the 26th day of April, 1963, the Harders conveyed the subject real estate to Venita Daniel (their daughter); that at all times since the Harders had acquired such real estate until they conveyed it to Venita Daniel it was their homestead; and that from and after April 26, 1963, when they conveyed the property, they were not the owners of any interest, legal, equitable or otherwise, in the property in question.

Trial was had to the court on the motion to quash, and on the 12th day of March, 1964, after taking the matter under advisement and considering the briefs of the parties, the trial court entered its findings and conclusions as follows:

"Findings of Fact:

"1. The defendants have lived in La Crosse and Rush County for many years prior to their ownership of the property involved.

"2. That defendants purchased the property in 1950, and occupied it as their home from that time until 1958.

"3. That the defendants moved to Colorado in 1958, because employment suitable to Mr. Harder was available there and was not available in the La Crosse area. Another reason for moving to Colorado was attributable to an allergy and asthmatic condition of Mr. Harder.

"4. In 1961, this Court, after hearing evidence to satisfy it, concluded that the defendants had not abandoned their homestead in Kansas.

"5. Since the hearing by this court in 1961, the defendants have been seeking satisfactory employment in the LaCrosse area, and in July, 1962, moved their furniture back to LaCrosse, from Colorado, and Mrs. Harder went to work at the Rush County Hospital. In December, 1962, the Harders returned to Colorado and took their furniture with them. Mrs. Harder indicated one reason was that the work at the hospital was too difficult for her and that her husband was unable to find satisfactory work in Kansas, although a continuous and constant effort was always being made to find suitable work for Mr. Harder.

"6. The defendants consider LaCrosse and Rush County their home and have always intended to return there and still do, even though they are no longer the owners of the property involved.

"7. The defendants sold their homestead to Venita Daniel to pay a debt, on or about April 26, 1963.

"8. The facts concerning intentions to hold the property as the homestead of the defendants did not materially change since this Court rendered its judgment in 1961.

"Conclusions of law:

"A. The Court concludes, as a matter of law, that the property levied on in this case by the plaintiff for a judgment due him by the defendants was the property of defendants until it was conveyed by them in April, 1963, to Venita Daniel.

"B. That said property was in 1950, in 1958, when the defendants moved to Colorado, in 1961, when this matter was first considered by this Court, and up to and including April 26, 1963, the homestead of the defendants, and that it was never abandoned.

"C. That the judgment lien of the plaintiff never became a lien against the defendants' property herein involved and that Venita Daniel took the property by the defendants' conveyance to her free and clear of the plaintiff's judgment lien."

Thereupon the trial court in the memorandum set forth the legal reasons for its decision and entered its order sustaining the motion to quash, from which order appeal has been duly perfected.

The specific points relied upon by the appellant will be considered in order.

The appellant first contends the trial court erred in ruling that the Harders had established a *prima facie* case on their motion to quash, when they had only introduced the journal entry of judgment entered in the injunction action (Harder v. Parker, Case No. 4130); the deed from the Harders to Venita Daniel, conveying the premises in question; and a stipulation from Bellport that no execution had been levied from March 27, 1961, to November 21, 1963.

Upon the introduction of the foregoing evidence the trial court ruled that the Harders had established a *prima facie* case as far as the homestead issue was concerned, and that the burden of proof was then upon Bellport to show an abandonment of the homestead of the Harders.

The appellant relies upon Article 15, Section 9 of the Constitution of Kansas, and K. S. A. 60-2301, for the proposition that in setting apart real estate as the homestead for exemption purposes it must be "occupied as a residence by the family of the owner." The appellant argues it is elementary law that there must be occupancy of the premises as a residence before the homestead exemption is applied; that *occupancy* is one requirement and *residence* is another requirement. It is argued that neither was shown by the Harders to support their motion to quash in an effort to establish their *prima facie* case.

The appellant relies upon recitals in the deed to Venita Daniel to show that the Harders were "of El Paso County, Colorado" at the time of the execution of the deed; and that the acknowledgment of the Harders to the deed conveying the premises indicates it was executed and acknowledged by them in El Paso County, Colorado. To support the proposition of law, the appellant relies upon *Blitz v. Metzger,* 119 Kan. 760, 241 Pac. 259; *Citizens State Bank v. Bird,* 121 Kan. 617, 249 Pac. 593; and *Quinton v. Adams,* 83 Kan. 484, 112 Pac. 95.

While occupancy as a residence is essential to the establishment of a homestead, once a residence has been established, such residence is presumed to continue until the contrary is clearly shown. (*Arnette v. Arnette,* 162 Kan. 677, 178 P. 2d 1019; *Garlinghouse v. Mulvane,* 40 Kan. 428, 19 Pac. 798; and *Keith v. Stetter,* 25 Kan. 100.)

Here the homestead was clearly established by the trial court's prior ruling in the injunction action, which was shown when the journal entry in Case No. 4130 was introduced. This judgment had not been appealed and was still in force and effect.

The mere signing of a deed in another state does not make that state one's residence, nor does it by "positive and clear evidence" establish the termination of a homestead in another state.

The evidence to show abandonment of a homestead must be "positive and clear," and the burden of proof is upon the party attempting to defeat the homestead. (*Elliott v. Parlin,* 71 Kan. 665, 81 Pac. 500.)

The term "occupancy" as used in the Constitution of Kansas and 60-2301, *supra,* does not necessarily mean "actual occupancy" or physical presence. When a homestead is established, the term "occupancy" contemplates a temporary absence. (*Shattuck v. Weaver,* 80 Kan. 82, 101 Pac. 649.) It has also been held that the temporary absence of a landowner from the premises, after having placed a tenant in possession, is not an abandonment of the homestead. (*Deering v. Beard,* 48 Kan. 16, 19, 28 Pac. 981.)

It follows that a *prima facie* case was made by the Harders, and the burden of proof was upon the appellant to show abandonment of the homestead by clear and convincing evidence.

The appellant next contends the trial court erred in overruling his motion to dismiss, interposed after it had ruled that the Harders had established a *prima facie* case.

On this point the appellant moved the trial court to withdraw its ruling (that the Harders had established a *prima facie* case as far as the homestead was concerned) and consider his motion to dismiss. Having already determined that the Harders had established a *prima facie* case, the appellant's motion to dismiss was likewise without merit and the trial court did not err in disposing of this matter.

The appellant next contends the trial court erred in striking his testimony to the effect that the note given to him by the Harders, and upon which he was seeking to collect, was an obligation contracted for the purchase of the homestead.

The judgment entered in this case shows that the mortgage, covering premises other than those involved in this litigation, was given to secure the notes upon which the appellant sued. The judgment entered in the trial of this action foreclosed the mortgage. Had the trial court permitted the appellant to testify in this matter as to the actual consideration for which the notes were given, as the appellant now contends, it would, in effect, impeach the judgment in foreclosure. (See, *DePriest v. Ransom,* 165 Kan. 147, 193 P. 2d 191.) The issues framed by the pleadings in this case indicate that the notes were given in settlement of an account. These statements are not denied by the appellant, nor are they refuted by anything in the judgment.

Furthermore, all parties were before the court in February, 1961, when it was determined in the injunction action that the property in question was a homestead free of any lien or claim of the appellant, and no appeal having been perfected, the matter is now *res judicata.* The failure of the appellant to raise the question then, assuming that he could have done so, precludes further litigation on the issue. (*Boyles v. Emery,* 159 Kan. 300, 153 P. 2d 936.) This rule applies to an intervenor in an action as well as to a party. (*Brent v. McDonald,* 180 Kan. 142, 155, 300 P. 2d 396.) The *Brent* case discloses that it is immaterial whether the prior judgment is in the same case or in a case bearing a different file number.

The appellant contends there was no substantial evidence to support the trial court's findings, conclusions and decision.

It has been held that a verdict cannot be upset if there is any evidence in the record to support it, where such issue is clearly presented without complicating factors, but such rule yields to the impact of admissions made by a party in his testimony, while a

witness in the case, and such admissions are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross examination of the party. (*Hiniger v. Judy,* 194 Kan. 155, 398 P. 2d 305, Syl. ¶ 2; and *Reeder v. Guaranteed Foods, Inc.,* 194 Kan. 386, 393, 399 P. 2d 822.)

The foregoing rule applies equally to a situation where the trial court makes findings based upon the evidence in the absence of a jury.

In an attempt to invoke the foregoing rule the appellant contends the Harders in this case have made statements in their testimony which admit the abandonment of their homestead in LaCrosse.

After the Harders had established a *prima facie* case on the motion to quash, the appellant called Mrs. Harder as a witness to testify in the matter.

An examination of her testimony, both on direct examination and cross examination, does not disclose that she made any admissions that would establish the abandonment of their homestead in LaCrosse.

It is apparent from the brief the appellant in his argument is relying upon testimony previously given in Case No. 4130, the injunction action brought by the Harders against the sheriff. But it must be observed the judgment in that case was never appealed, and the matter is *res judicata.* The appellant cannot now reach into the testimony of that case to impeach that judgment, or to gain support by using it as evidence in the proceeding on the instant motion to quash.

The appellant contends the decision of the court was contrary to the law and the evidence.

The appellant argues that it seems only fair the Harders should be bound by what they actually did, as evidence of their intent, rather than what they say in their self-serving declarations of intent; that what the parties did is more indicative of their intention; that the record so considered justifies a conclusion that their intent was to become and remain citizens of Colorado.

When a homestead is once established, it requires two things to destroy it. First, a removal; and second, an intention not to return. The personal intention of the person having the homestead to abandon it is therefore essential. (*Garlinghouse v. Mulvane,* supra; and *Palmer v. Parish,* 61 Kan. 311, 59 Pac. 640.) Since intention,

or lack of intention, to abandon was a vital fact to be determined by the trial court, it was proper that the parties express their intent by their personal testimony. This is a well-recognized rule of evidence in Kansas, and it is sufficient to support a finding that the claimed premises are a homestead. (*Blitz v. Metzger,* supra.) The testimony of Mrs. Harder during the trial upon the instant motion disclosed an intention to live in LaCrosse and not to make the state of Colorado her permanent residence. Her action substantiated this contention because she lived in LaCrosse for the last half of 1962 and occupied the homestead. All of her furniture was in LaCrosse at this time. She returned to Colorado in December, 1962, only because suitable work was not available in LaCrosse at the particular time she went to Colorado. She rented the premises in January, 1963, on a monthly basis, telling the renter she would give him a month's notice before she moved back. A temporary absence will not destroy a homestead and during the temporary absence of the owner the premises may be rented without destroying their homestead character. (*Shattuck v. Weaver,* supra.)

An examination of the record discloses substantial evidence to support the trial court's findings, conclusions and decision. The decision was in accordance with the law and the evidence.

The appellant contends the trial court erred in finding that the judgment lien of the appellant never became a lien against the Harders' property, and that Venita Daniel took such property by conveyance from the Harders free and clear of the appellant's judgment lien.

The appellant argues there was a lapse of some four months from the Harders' return to Colorado in December, 1962, and the conveyance of the property to their daughter in April, 1963. He argues the abandonment of the homestead became final in December, 1962; that the judgment lien then attached and the conveyance to Venita Daniel was subject to the judgment lien of the appellant.

It has been held that a homestead can be conveyed free and clear of a lien, when a judgment exists against the party claiming the homestead (*Wilson v. Taylor,* 49 Kan. 774, 31 Pac. 697); and that such conveyance can be made with or without consideration. (*Scott v. Rodgers,* 97 Kan. 438, 155 Pac. 961; and *Mathewson, Administrator, v. Richards,* 114 Kan. 500, 220 Pac. 185.)

Furthermore, the property did not lose its homestead character a few minutes before the deed was executed by the Harders to their

daughter, as contended by the appellant, on the ground that they had formed an intention to abandon their home. In *Palmer v. Parish,* supra, it was held the fact that one has under consideration a change of residence and is looking about for a new home does not destroy the homestead, nor will an offer to sell a homestead destroy it. (*Elliott v. Parlin,* supra, at p. 668.)

The validity of a conveyance of a homestead free and clear of a judgment lien has been before this court many times. In all these cases the court has never held that the conveyance itself is enough to establish an intention to abandon the homestead. (*Wilson v. Taylor,* supra; *Roser v. National Bank,* 56 Kan. 129, 42 Pac. 341; *Hopper v. Arnold,* 74 Kan. 250, 86 Pac. 469; and *Fredenhagen v. Nichols & Shepard Co.,* 99 Kan. 113, 160 Pac. 997.)

The appellant, as a creditor in this case, cannot complain upon the judgment debtors' sale of the homestead because "The homestead is something toward which the eye of the creditor need never be turned." (*Monroe v. May, Weil & Co.,* 9 Kan. 466, 476; and *Hixon v. George,* 18 Kan. 253, 260.) In the Monroe case it was said: "A man may sell his homestead, and give good title, no matter how many judgments may be standing against him." (p. 475.)

After a careful review of the record we hold the trial court did not err in finding that the judgment of the appellant never became a lien upon the property of the Harders which they conveyed to their daughter, Venita Daniel. She took such property free and clear of any judgment lien.

The judgment of the lower court is affirmed.