William B. BOSTIAN, Trustee in Bankruptcy of Amos P. Conard, Appellant,

v.

Robert B. MILLER and Gordon K. Lowry, Appellees.

No. 6377.

United States Court of Appeals Tenth Circuit.

Nov. 12, 1960.

Rehearing Denied Dec. 20, 1960.

---

1. Formerly Section 102.95.

Warren S. Earhart, Kansas City, Mo. (J. Willard Haynes, Kansas City, Kan., on the brief), for appellant.

Gordon K. Lowry, Valley Falls, Kan., for appellees.

Before MURRAH, Chief Judge, and PICKETT and HUXMAN, Circuit Judges.

MURRAH, Chief Judge.

This appeal involves the validity of a Kansas State Court attachment lien and is from the judgment of the trial court sustaining it. The suit arises out of Section 67 of the Bankruptcy Act, Title 11, U.S.C.A. § 107, sub. a(1), which provides in material part that "Every lien against the property of a person obtained by attachment * * * within four months before the filing of petition [in bankruptcy] * * * by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent * * *."

The material facts are that appellee Miller, represented by appellee Lowry, brought a suit against one Conard in a Kansas State Court and at the same time, attached certain personal property based upon the statutory ground that Conard was a non-resident of Kansas. And see General Statutes of Kansas Section 60–901. On motion to dissolve the attachment, the Kansas Court found that the defendant was a resident of Kansas and ordered the attachment dissolved "unless plaintiff posts attachment bond * * * in which case said attachment shall remain in full force and effect." On the same day Miller filed an attachment bond approved by the Clerk

**500**

of the Kansas Court reciting that Miller "has duly filed with the Clerk of said court the necessary affidavit for an order of attachment to be issued in the said action against the said A. P. Conard." The attached property was thereafter sold and the proceeds deposited with the Court Clerk.

Various motions and interventions were filed claiming the proceeds of the sale, but the validity of the attachment was never thereafter challenged in the State Court. More than 18 months after the attachment, the Kansas Court gave judgment to Miller and the proceeds of the sale of the attached property were paid to him. Within 4 months of the judgment, Conard was adjudged bankrupt and the trustee thereupon brought this suit against Miller and his attorney to recover the proceeds of the attached property on the grounds that the attachment lien was void and since the subsequent judgment was entered within 4 months of bankruptcy, the proceeds of the attachment sale passed to the trustee by virtue of Section 67, sub. a(3), which provides in material part that "The property affected by any lien deemed null and void under the provisions of paragraph (1) and (2) [of Section 67, supra] * * * shall be discharged from such lien, and such property * * * shall pass to the trustee * * *."

At all times material here, Conard was admittedly insolvent. The judgment was entered within 4 months of bankruptcy but it undoubtedly related back to the attachment. The decisive question is therefore whether the attachment lien can be sustained in the face of this collateral attack.

Of course the validity of the attachment lien is controlled by Kansas law and appellant-trustee relies upon a very old Kansas case in which the validity of an attachment of a homestead, based upon the non-residence of the defendant, was directly challenged. The Kansas Court categorically stated that "The attachment must stand or fall on the grounds alleged in the affidavit, and,

where it is once found that those grounds are not true, the attachment must fall, even if afterwards the property might be subject to the judgment." Garlinghouse v. Mulvane, 40 Kan. 428, 19 P. 798, 800. While the trial court did not think the case decisive of our question, it apparently could find no satisfactory explanation of it except to point out that the case had been subsequently cited as dealing wholly and solely with whether the property seized under an attachment was in fact, the homestead of the defendant. The trial court sought rather, to distinguish the case on the fact that while the State Court judgment did not specifically disclose that Miller ever amended his statutory affidavit, the subsequent events gave rise to a "strong inference" that he did so amend. The Court thought this inference strongly borne out by the recital in the judgment of the Kansas Court to the effect that the attachment would be dissolved unless a bond was posted, and by the presumption arising from the recital in the bond to the effect that Miller had "duly filed the necessary affidavits for an order of attachment * * *."

The appellee also denies the controlling effect of Garlinghouse v. Mulvane, Id., saying that the Kansas Court went to the extreme to protect the homestead, i. e., the law of the case was prompted by hard facts. But they do not suggest any good reason for not saying that the validity of an attachment lien should not stand or fall on the statutory ground set out in the supporting affidavit, and where it appears on the face of the record that the asserted grounds are not present, the attachment must fall. They seem to place some reliance on Belinder v. Cupp, 156 Kan. 729, 137 P.2d 139, 142, in which an attachment was directly attacked on the grounds that the supporting affidavit was verified before a notary public who was also attorney for the plaintiff, contrary to Kansas statute. The attachment lien was sustained but the court was careful to point out that the defect rendered the affidavit "only

-voidable, and may be amended." The appellees are thus ultimately brought to the point of urging a curative amendment by inference.

 In this collateral attack upon the attachment lien, we will of course indulge in the presumption of regularity of the proceedings which ultimately upheld it. Freeman, Law of Judgments, 5th Ed., § 387, p. 831–2. This means that we will presume the attachment lien was accompanied by every essential jurisdictional fact but if the absence of a prerequisite fact appears on the face of the record, the attachment lien must fall.

 The inference that the affidavit was amended is met and overcome by the virtual admission in the record that it was not amended. Indeed, in the pretrial proceedings the trial court noted the recital in the State Court judgment to the effect that Conard was a resident of Kansas. And when counsel noted that the affidavit "could have been amended", the trial court replied that it came too late unless the giving of the bond amounted to an amendment to show some other ground of attachment. While the bond did formally recite that the necessary affidavit for the attachment had been "duly filed", it is clear from statement of counsel that the original affidavit had not been amended to show a statutory ground for the attachment and that no new affidavit had in fact, been filed.

True, the attachment was never dissolved. The property was sold under it and the proceeds paid into court. But it seems too clear for doubt that the attachment was upheld and the property sold on the strength of the bond conditioned upon the payment to Conard any damages which he "may sustain by reason of the attachment if the order be wrongfully obtained." The judgment operated to perfect the attachment lien, or we may say, the attachment lien merged in the judgment, but it came too late to avoid the sweep of Section 67 of the Bankruptcy Act. Judgment is reversed.