No. 35,173

PEARL D. MEECH, *Appellee* and *Cross-appellant*, v. ROWE GRIGSBY, *Appellant.*

(113 P. 2d 1091)

. Opinion filed June 7, 1941.

*Harry C. Blaker,* of Pleasanton, *James W. Wallace* and *Leighton Fossey,* both of Mound City, for the appellant.

*Walter B. Patterson,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action is the outgrowth of an order of a probate court sustaining a petition of the administrator to sell real estate for the payment of debts. Appellee is the widow of the deceased. Appellant claims to be a purchaser of the property under a written contract with the administrator and an order of sale by the probate court. He claims he is entitled to a deed to the property but, if not, he has a lien thereon to the extent of the value of the improvements he placed thereon after taking possession. The appeal is from an order of the district court overruling appellant's motion for a new trial, and from the final judgment by which it was decreed the prop-

erty constituted the homestead of the widow and as such was exempt from sale for payment of debts.

The property involved consisted of fourteen lots in the incorporated city of Prescott. There were seven lots on each side of an alley which had been dedicated to the public use, but which had not yet been so used. All the lots comprised approximately three acres. The improvements consisted of a house on one side of the alley and a barn and well on the other side of the alley.

The principal defense of the widow in the probate court and in the district court was that one acre of the ground constituted her homestead. The one acre she claimed was not described and its exact location and boundaries have never been determined. The probate court held against her on the homestead contention, and ordered the property sold to pay debts pursuant to the petition of the administrator. The widow appealed to the district court. In that court the instant appellant was permitted to file an intervening petition. Issues were joined by an answer filed by the widow. The principal issues joined by the pleadings in the district court were: (1) Did one acre of the property constitute the widow's homestead; (2) if so, did the widow waive her homestead rights therein, as against appellant, by her acts and conduct with respect to the sale of the property, and (3) if the widow was not estopped to claim the property as her homestead then what were appellant's rights, if any, under the occupying claimants act.

While the journal entry of judgment discloses the foregoing issues were joined by the pleadings, the journal entry and the trial record clearly disclose that the only issue the trial court actually considered and decided was whether the property constituted the widow's homestead at the date of her husband's death. The refusal to consider the other issues and to admit evidence touching those issues, was raised by appellant on motion for a new trial. The motion was overruled and from that ruling and the judgment the appeal is taken.

The first question to be determined is whether the widow had a homestead right in any portion of the fourteen lots. The second question is what particular portion thereof, if any, constituted her homestead. Other questions presented will be treated later.

Appellee and her husband were married in 1894. Her husband died intestate October 17, 1939. His personal property at the time of his death consisted of meager household furnishings. The record

title to the lots in question stood in his name. The improvements thereon consisted of a five-room house located on lot No. 3. A barn was located on lot No. 1, which was directly across the alley from lot No. 3. A well was located across the alley from the house and was situated on lot No. 2. The parties purchased that property together in 1914. The value of the entire premises was approximately $700 or $800. By reason of the fact the husband was addicted to the habit of drinking he made life miserable and disagreeable for his wife. By reason of the husband's misconduct the parties in 1928 agreed to live separately. They were not divorced. At that time the wife deeded the lots in question to her husband and he executed a deed to her for twenty acres lying just east and outside of the town of Prescott. They divided their personal property. There were no improvements on the twenty-acre tract and the wife built a little barn on the twenty-acre tract and lived in it. They had one married daughter who lived elsewhere. The widow and daughter were the only heirs of the decedent. The widow worked at whatever employment was obtainable. For a short time she worked in Kansas City. She returned to the twenty-acre tract and raised chickens and hogs. She visited her husband intermittently, in the home in question. In 1933 the husband became ill and remained so during most of the remainder of his life. There was evidence a reconciliation was effected in 1933, and that thereafter she was frequently in the home of her husband. Although the evidence is conflicting there is ample testimony to sustain the court's finding that the wife, beginning in 1933, occupied the home with her husband during the daytime and that, at times, she remained with him overnight. Her testimony, in substance, was that after 1933 she was with him practically every day, washed for him and cooked for him. That testimony was corroborated. Her testimony was "it was man and wife and nothing else." He was without funds and she provided food for him, but did not supply money for whisky. She kept her wearing apparel in the home. She paid taxes on the property during the last four years of her husband's life. She did not remain in the home all the time for the reason that her husband had rented some of the rooms to people who also drank and it was disagreeable to stay there. When her husband died she moved her household goods from the barn on the twenty-acre tract into her place (meaning the house in question). She had always regarded this property as her home and his home. The building on the twenty acres was a barn

with a tin roof and concrete floor. She testified "It was not a home, but a place to hang out and raise chickens." During a portion of the years 1933 and 1934, when she was working for other parties, the husband looked after the chickens and hogs on the twenty-acre tract. She cared for her husband almost continuously when he was sick. She and her daughter made the necessary funeral arrangements.

Appellant contends the widow was deprived of her homestead rights in the property by reason of the separation in 1928, and the deed which she executed and delivered to the husband. We do not believe the agreement to live separate and apart, under the circumstances in the instant case, deprived the widow of her homestead rights. There is ample evidence to support the finding of the trial court that the separation was occasioned by the husband's fault and misconduct. In fact, that does not appear to be disputed. In order to constitute an abandonment of the homestead the abandonment must be voluntary. Absence of a wife from the home occasioned by the husband's abuse does not constitute a voluntary abandonment of homestead rights. It is well established that a wife by living apart from her husband without fault on her part does not thereby divest herself of her homestead rights at his death. (*Blankenship v. Hall*, 233 Ill. 116, 132, 84 N. E. 192; *Rogers v. Day*, 115 Mich. 664, 74 N. W. 190; *Sherrid v. Southwick*, 43 Mich. 515, 519, 5 N. W. 1027; *Novotny v. Horecka*, 200 Iowa 1217, 206 N. W. 110, 42 A. L. R. 1158, 1161, and annotation, page 1162; *O'Neal v. Miller*, 143 Fla. 171, 196 So. 478, 129 A. L. R. 295, and annotation 305; 29 C. J. 933, § 345; 26 Am. Jur., p. 113, § 181, p. 121, § 195.)

The separation agreement was oral. It appears deeds were executed and exchanged in order that the wife might have some place to reside where she would be free from her husband's molestation during the times he was under the influence of liquor. There was no decree of divorce which barred her from any right or interest in and to the property at her husband's death. There was nothing in the agreement such as in the case of *Hewett v. Gott*, 132 Kan. 168, 294 Pac. 897, and other cases relied upon by appellant, in which the widow renounced and waived all right, title and interest—present, future or contingent—in and to the property. Moreover, there was sufficient evidence, although the evidence was conflicting, that a reconciliation was effected in 1933, and that thereafter the parties occupied the premises as husband and wife. Under the circum-

stances we think the finding and judgment of the district court that the widow had a homestead right in the city property cannot be disturbed.

But what portion of the fourteen lots, comprising between two and three acres, and separated by an alley, constitute the widow's homestead? Manifestly, it includes the ground upon which the home stands. But how much more land does it embrace and what are its boundaries? The district court found the homestead included one acre of the real estate on which the dwelling house and improvements belonging thereto, were situated. The barn and well, however, were located on lots across an alley from the lot on which the house was situated. It is true that two or more lots or pieces or parcels of land may, when adjoining, and when united, constitute only one tract or body of land, and therefore, may all be included in one and the same homestead. But where several lots or pieces or parcels of land claimed as a homestead, are not contiguous, but are separated by lands in which the person claiming the homestead has no title or interest, such several lots, pieces or parcels of land cannot be included in or constitute one and the same homestead. In this state the fee of all streets, alleys and other public grounds which have been dedicated to the use of the public by the proprietors of any town or city, is vested in the county in which such streets, alleys or other public grounds are situated and not in the abutting or adjacent lot owners. (*Randal v. Elder,* 12 Kan. 257; *Commercial Nat'l Bank v. Carnahan,* 128 Kan. 87, 89, 276 Pac. 57; 1 Bartlett's Kansas Probate Law and Practice, §§ 177, 178.) Manifestly, the judgment of the district court as to what portion of the fourteen lots constituted the widow's homestead cannot stand. The ground allotted to the widow as her homestead was not only separated by an alley, but in addition to that fact the boundaries of the homestead have never been selected by the widow and settled by judicial decree. The result is her homestead rights in particular lots or portions thereof, other than the lot on which the dwelling stands, remain wholly undetermined.

Appellee contends the widow has the right to select her homestead at any time prior to final settlement of the estate. We think it was the intention of the lawmakers under the new probate code to require the widow to promptly select and describe the ground she claims as a homestead. Certainly she is required to make such selection when a controversy concerning the sale of the land arises,

as to a part of which she claims a homestead. The new code provides that after the inventory and appraisement has been filed, the surviving spouse, or in case there is none, the children may petition the court to set apart the homestead and personalty allowed in paragraph 21 (G. S. 1939 Supp. 59-403), and that the petition shall show, among other things, a *description* of the homestead claimed. (G. S. 1939 Supp. 59-2235.) The same section further provides that upon proof of the petition the court shall set apart such homestead and personal property and that such property so set apart shall be delivered by the executor or administrator to the persons entitled thereto, and shall not be treated as assets in his custody. Upon final settlement the decree must state the proportion or part of the real estate to which each legatee or devisee is entitled. (G. S. 1939 Supp. 59-2249.) The new code further provides that upon final settlement the court shall assign the real estate to the persons entitled thereto. (G. S. 1939 Supp. 59-2251.) It would result in endless confusion to permit the instant erroneous judgment to stand as to what constitutes the widow's homestead and to permit the widow thereafter to select a different homestead. The controversy should be settled now while the issue is before the court. The case must be remanded for a new trial in order to permit the widow to make a selection of the homestead property and in order that the one acre she chooses to take may be definitely described. The one acre must, of course, all be located on the side of the alley on which the dwelling house is situated. The district court has ample power and general jurisdiction to permit such pleadings to be filed or amendments to be made to the instant pleadings as will enable the court to render a decree in keeping with the views herein expressed. The power and general jurisdiction of the district court in this regard is the same as though that court had obtained original jurisdiction of the action. (G. S. 1939 Supp. 59-2408; *Erwin v. Erwin,* 153 Kan. 703, 113 P. 2d 349.)

The case must also be remanded for a new trial in order to obtain a determination of two other undecided issues, namely, first whether the widow by her acts and conduct with respect to the sale of the property, waived her homestead rights therein, and, second, if she is not estopped from claiming a homestead right, then what appellant's rights are, if any, under the occupying claimants act.

It may also be well to note one other point. It pertains to the claim for funeral expenses which was allowed by the probate court

on January 8, 1940, after finding the claim had been duly exhibited to the administrator who had waived service of notice of the presentation of the claim and had consented to its hearing. The testimony of the probate judge was that the widow and her daughter had both conceded the claim was just and that the property should be sold to pay the debt. The only contention made by appellee now, or on appeal to the district court, is that no notice as required by law had been given to her as to the hearing of the claim. She does not dispute the claim and, according to the record, conceded in open court prior to the hearing that it was a just claim and that the property should be sold to pay it. The order allowing the claim was an appealable order. (G. S. 1939 Supp. 59-2401 [5]). The time for perfecting the appeal was thirty days. (G. S. 1939 Supp. 59-2404.) 'No appeal from the order was perfected in time. The claim was allowed on January 8, 1940, and the only appeal was from the order of the probate court refusing to dismiss the administrator's petition to sell this real estate to pay debts of the estate. That appeal was not filed until June 10, 1940. In that notice of appeal she did not appeal from the allowance of the claim on the ground it was not a just and meritorious claim, but only for the reason she had no formal notice of the hearing. Under the circumstances, we think the point is without merit.

That portion of the judgment, which awarded appellee a homestead right in the city property, is affirmed. The action is remanded for a new trial on the other features of the case heretofore indicated.