(609 P.2d 211)

No. 50,706

# In the Matter of the Estate of Joseph J. Fink, Deceased.

Petition for review denied June 20, 1980.

Opinion filed March 28, 1980.

*Thomas M. Dawson* and *Ethan Potter,* of Leavenworth, for the appellant.

*Patrick J. Reardon* and *Thomas J. Brown, Jr.,* of Leavenworth, for the appellee.

Before SWINEHART, P.J., REES and SPENCER, JJ.

SWINEHART, J.: This is an appeal by Michael Bray, a judgment creditor against the estate of Joseph J. Fink, from an order of the district court of Leavenworth County determining that Monica Fink, the widow of Joseph J. Fink, had a homestead interest in 70 acres of real estate, precluding the sale of the property in whole or in part to satisfy Bray's $25,000 judgment.

The question on appeal is whether the district court erred by finding that Monica Fink established and had not abandoned a homestead interest in 70 acres of real estate located in Leavenworth County, thereby precluding the sale of the property to satisfy the judgment creditor. The appellant Michael Bray raises the issue in two parts: (1) Whether Monica Fink failed to establish a homestead in the first instance, thereby causing the entire 70 acre tract, even that portion heretofore conveyed, to be subject to the judgment of the creditor. (2) If a homestead was initially created in favor of Monica Fink, whether she subsequently abandoned it, causing the tract still partially owned by her after the conveyance of 24 acres to her daughter and son-in-law to be subject to the judgment of the creditor, Michael Bray.

Joseph J. Fink died testate at his residence in Easton, Leavenworth County, on August 18, 1975. On September 25, 1975, his will was admitted to probate. However, his wife Monica Fink elected to take at law and not under the will, and the probate court, by order dated September 25, 1975, and filed on April 15, 1976, set forth the homestead rights of Monica Fink and decreed her interest in the real property in the estate of Joseph Fink.

In October of 1976, a journal entry of judgment was entered in favor of Michael Bray in the amount of $25,000 against the estate of Joseph Fink, and a journal entry allowing Bray's claim against the estate and classifying it as a third class claim was entered on April 7, 1977. The creditor moved for the sale of real and personal property from Fink's estate to satisfy the claim.

The real property in question consisted of approximately 70 acres located in Easton, Leavenworth County, which the decedent had owned with his wife, Monica, as tenants in common. The Finks had been married in December of 1940, and had lived on the property together with their children Joseph J. Fink, Jr., and Jeanne M. Fink Wells until approximately 1968. As Monica and Joseph had been experiencing marital difficulties, due largely to Joseph's excessive drinking, Monica obtained employment at Hallmark Cards in Leavenworth. She lived in a mobile home in

Leavenworth for approximately three years, spending a few months with her daughter during that period of time. Later, Monica and her son bought a house on North 5th Street in Leavenworth. Monica paid the $6,000 down payment on the house and in return was allowed to live at the residence with her son's family rent-free. The deed for the house on North 5th was recorded in the names of her son and daughter-in-law.

When Monica lived in Leavenworth, she would return to the farm in Easton on weekends or at other times to take care of household tasks, and after her husband became ill (about one year prior to his death), she cared for him during the weekends at the farm. During part of this time the decedent was living there with another woman.

Monica did not move back to the farm immediately following her husband's death, due largely to her job in Leavenworth. Furthermore, the dwelling on the farm was in poor condition and her family did not feel it suitable for habitation. After her intended retirement from Hallmark Cards in 1980, however, she did plan to return.

In September of 1976, Monica deeded 24 acres of the 70 acre tract to her daughter Jeanne and son-in-law Tom Wells. Monica's son Joseph J. Fink, Jr., and his wife also executed a quitclaim deed to the same property in favor of the Wells. Early in 1977 the house located on the farm was demolished because of its dilapidated condition. Monica cosigned a note so that construction could begin at the site by the Wells. The building permit for construction at the location was also obtained in her name. Monica and her children testified that she intended to move into the basement of the Wells' home where they were constructing an apartment for her to use after her retirement.

The trial court found in its order that that portion of the real estate which constituted a part of the estate of Joseph Fink was subject to the homestead rights of Monica Fink, and as a result, was exempt from forced sale or any process of law. The creditor filed a notice of appeal from this judgment of the trial court.

We now consider the extent of Monica Fink's homestead interests, if any, in the 70 acres in Easton.

Article 15, § 9 of the Kansas Constitution sets forth the homestead exemption. The legislature has also enacted several statutory provisions on the subject, *e.g.*, Article 4 of the Probate Code, K.S.A. 59-401 *et seq.,* and K.S.A. 60-2301 *et seq.*

K.S.A. 1979 Supp. 59-401 reads as follows:

"A homestead to the extent of one hundred and sixty (160) acres of land lying without, or of one (1) acre lying within, the limits of an incorporated city, or a mobile home, occupied by the decedent and family, at the time of the owner's death, as a residence, and continued to be so occupied by the surviving spouse and children, after such death, together with all the improvements on the same, shall be wholly exempt from distribution under any of the laws of this state, and from the payment of the debts of the decedent, but it shall not be exempt from sale for taxes thereon, or for the payment of obligations contracted for the purchase thereof, or for the erection of improvements thereon, or for the payment of any lien given thereon by the joint consent of husband and wife. The title to the homestead property of a decedent shall pass the same as the title to other property of the decedent."

K.S.A. 59-2235 describes the procedures to be followed in petitioning the court to set aside the homestead. Property set aside as a homestead is not to be treated as an asset of the estate in the custody of the executor or the administrator. However, title to the homestead is to be included in the final decree of distribution. K.S.A. 1979 Supp. 60-2301 provides:

"A homestead to the extent of one hundred and sixty (160) acres of farming land, or of one acre within the limits of an incorporated town or city, or a mobile home, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife."

Whether or not a homestead has been created is a question of fact. *Waltz v. Sheetz,* 144 Kan. 595, 602, 61 P.2d 883 (1936). On appeal, the court will not disturb findings of fact that are supported by substantial competent evidence. *McGilbray v. Scholfield Winnebago, Inc.,* 221 Kan. 605, Syl. ¶ 3, 561 P.2d 832 (1977); *Baker v. Ratzlaff,* 1 Kan. App. 2d 285, Syl. ¶ 2, 564 P.2d 153 (1977).

In its findings of fact, the trial court did not specifically state whether or not Monica had ever established a homestead in the 70 acres in Easton. However, in its conclusions of law it found:

"There does not appear to be any issue as to whether, at one time, Monica M. Fink did occupy the land and satisfy the requirement for obtaining a homestead exemption."

This statement in the court's conclusions of law was backed by adequate factual findings. For example, the court found that after the Finks were married in 1940, they lived together as husband and wife on the 70 acres. The couple lived there with their children until sometime after the children left home. When marital problems developed between Monica and Joseph as a result of his drinking problem, she moved to Leavenworth and found employment at Hallmark Cards, yet generally returned to the farm on weekends to care for Joseph. Therefore, there was substantial competent evidence to support the trial court's decision that Monica and Joseph had established a homestead in the property at one time.

The creditor in this action urges that if indeed Monica had established a homestead interest in the 70 acres in Easton, she nonetheless had abandoned any interest which she might have had for all or any of the following reasons. (1) She moved to Leavenworth in 1968 prior to Joseph's death and intended to remain there until her retirement in 1980. (2) In September, 1976, she conveyed an interest in approximately 24 acres of land, on which the residence she had occupied with Joseph was situated, to her daughter Jeanne and son-in-law Tom Wells. She showed no intention of returning to the property except to live on that portion which was conveyed to the Wells and then only in 1980. Furthermore, the fact that the Wells now owned the land on which the residence was to be built was sufficient to remove the homestead interest from the remaining portion of the 70 acres. (3) The farmhouse on the property was demolished in 1977, and Monica did not intend to construct a home on the site; rather, her daughter and son-in-law planned to do so.

Once it has been established that a homestead interest in property exists, then the burden of proof is on the party attempting to defeat that interest to show by positive and clear evidence that the homestead has been abandoned, as there is a presumption that once established the homestead continues unless the contrary is shown. *Bellport v. Harder,* 196 Kan. 294, 411 P.2d 725 (1966). Whether a homestead has been abandoned is a question for the trier of fact. *Waltz v. Sheetz,* 144 Kan. 595. Two tests must be met before a homestead interest may be destroyed or abandoned: (1) there must be a removal from the property, and (2)

there must be an intent not to return. The parties claiming the homestead interest may properly testify as to their intent regarding a proposed return to the property and such testimony is sufficient to support a finding that the property remains a homestead.

"The personal intention of the person having the homestead to abandon it is therefore essential. (*Garlinghouse v. Mulvane,* [40 Kan. 428, 19 Pac. 798 (1888)]; and *Palmer v. Parish,* 61 Kan. 311, 59 Pac. 640 [1900].)" *Bellport v. Harder,* 196 Kan. at 300.

Furthermore, the homestead laws are to be liberally construed in favor of those claiming it. *In re Estate of Dittemore,* 152 Kan. 574, 106 P.2d 1056 (1940). As already noted, where the findings of the trial court are supported by substantial competent evidence, they are conclusive on appeal.

The creditor first contends Monica's move to Leavenworth in 1968 constituted an abandonment of her homestead interest. Two cases cited by the parties discuss whether an absence from the homestead constitutes an abandonment. In *Meech v. Grigsby,* 153 Kan. 784, 113 P.2d 1091 (1941), a widow and her husband lived together on the property in which she was claiming a homestead interest until 1928. At that time the couple decided to separate because the husband had a drinking problem, making life miserable for his wife. However, the couple never obtained a divorce. The widow lived on another 20 acre tract after the separation, but continued to visit her husband intermittently at his residence. In 1933, the husband became ill and there was evidence, even though somewhat conflicting, that the couple reconciled at that time. In any event, thereafter the wife frequently visited her husband in his home, remaining with him during the day and occasionally overnight. She kept some of her clothing in the home and paid taxes on the property during the last four years of her husband's life, but did not remain there all the time because her husband continued to drink and had rented some of the rooms to others who also drank. Upon her husband's death, the widow returned to the residence. The court found that the couple's decision to live apart did not deprive the widow of her homestead rights in the property because there was sufficient evidence that the separation was due to the husband's drinking and misconduct.

"In order to constitute an abandonment of the homestead the abandonment must

be voluntary. Absence of a wife from the home occasioned by the husband's abuse does not constitute a voluntary abandonment of homestead rights. It is well established that a wife by living apart from her husband without fault on her part does not thereby divest herself of her homestead rights at his death. (*Citations omitted.*)" *Meech v. Grigsby,* 153 Kan. at 787.

Similarly, in this case there was ample testimony that Monica Fink had been driven or forced to leave the house in Easton because of her husband's drinking problem. Although her relationship with her husband in the last years of his life may not have been as strong as the one described in *Meech,* nonetheless, the evidence showed that she returned to the home on weekends to care for Joseph and for the house. Additionally, other obstacles prevented her constant occupancy of the premises, *e.g.,* her job, the fact that the decedent lived at times with another woman on the farm, and the dilapidated condition of the residence.

*Bellport v. Harder,* 196 Kan. 294, also addressed the effect of a temporary absence from a homestead. In *Bellport* the Harders occupied the alleged homestead property from 1950 until 1958. They then moved to Colorado for health reasons and to seek employment, since none was available in LaCrosse where the home was situated. Apparently, however, the couple did not intend to make Colorado their permanent residence. In fact, the couple continued to seek satisfactory employment in LaCrosse, and in the latter part of 1962, they returned to the home in LaCrosse with their furniture. The couple again moved to Colorado at the end of 1962 because there was no suitable work in LaCrosse and rented their homestead in LaCrosse on a monthly basis, telling the renter that a month's notice would be given before they moved back. A few months later, the Harders conveyed the property to their daughter. The trial court stated:

"The term 'occupancy' as used in the Constitution of Kansas and 60-2301 [substantially the same as K.S.A. 1979 Supp. 59-401] does not necessarily mean 'actual occupancy' or physical presence. When a homestead is established, the term 'occupancy' contemplates temporary absence. (Citations omitted.)" *Bellport v. Harder,* 196 Kan. at 298.

Despite the facts presented in *Bellport,* the Supreme Court affirmed the trial court's decision that the Harders had not abandoned their homestead prior to conveying it to their daughter, and as a result, she took the property free and clear of the judgment creditor's lien.

Monica Fink's absence from her home necessitated by her

husband's conduct is analogous to that of the couple in *Bellport v. Harder,* for Monica moved to Leavenworth to support herself until her retirement. Although she had indeed removed herself from the premises, she retained an intent to return to the property permanently after her retirement and did return intermittently prior to that time until her husband's death in 1975. Even the facts that she had lived in a mobile home for a while and had provided the $6,000 down payment for her son to purchase a home in Leavenworth where she lived rent-free are not sufficient to override her own testimony that she did intend to return to the farm. The only possible flaw posed by her move was that she did not intend to return to the homestead until 1980, nearly five years after her husband's death and it is arguable that this is an unreasonably long delay. Nevertheless, the trier of fact had the duty to decide whether the move to Leavenworth resulted in abandonment, and failed to so find.

The creditor next contends that the conveyance of the land to Tom and Jeanne Wells, coupled with the demolition of the farmhouse, constitute sufficient evidence to establish that Monica Fink had abandoned her homestead interest in the tract.

K.S.A. 1979 Supp. 59-401 requires that the residence continue to be occupied by the surviving spouse after the decedent's death in order to remain wholly exempt from the payment of the debts of the decedent. The trial court concluded that the Wells had designated a living area for Monica's use after her retirement in the home they were constructing on the 24 acres conveyed to them. In its conclusions of law, the trial court decided that such an arrangement was sufficient to retain the homestead exemption for that 24 acres, and as a result the entire 70 acres would continue, under the unusual facts in this case, to be subject to a homestead right in Monica.

The question of the demolition of the dwelling is really a concomitant part of the conveyance issue and accordingly does not merit much attention. However, the mere fact of demolition alone is insufficient to destroy the homestead where there is evidence that the homestead premises were vacated because they were unfit for habitation, so long as preparations were made within a reasonable time to return to the premises and occupy them as a homestead. The trier of fact must determine the nature of the absence from the property and the intent of the parties. *Rose v. Bank,* 95 Kan. 331, 148 Pac. 745 (1915).

*Matney v. Linn,* 59 Kan. 613, 54 Pac. 668 (1898), was relied upon by the trial court and the creditor in this action, but both reached opposite conclusions as to its import in this case. Although this case is factually distinguishable, it nevertheless provides guidance in resolving the contention of the creditor that the conveyance of the 24 acres to Jeanne and Tom Wells destroyed Monica's homestead interest. *Matney v. Linn* was a partition action brought by the widower William Matney against the children of his deceased wife Harriet. The property in controversy was a quarter section which was held in Harriet's name. The Matneys had been married in 1865 and lived on the property as a homestead until 1879 when the property was awarded to Harriet in a divorce decree. In 1881 the parties reconciled and lived together as husband and wife. Prior to this, however, they entered into an agreement that neither of them would have any interest in the property of the other. The agreement also contained other provisions which need not be repeated here. The overall agreement unquestionably evinced an intent that neither party would share any interest in the property of the other during their lives together or upon the death of the other. After the parties began living together, Harriet executed a deed conveying to her son the south half of the premises in question. She later conveyed the north half to her daughter Sarah. While her husband did not join in the deed to Sarah, he consented to it.

The Supreme Court held that after the couple began living together as husband and wife in 1881, William Matney acquired a homestead interest in the quarter section which he and Harriet occupied. However, he enjoyed only a right of occupancy with a restriction upon his wife's power to alienate the property unless she obtained his consent. His interest did not rise to the level of an estate. The court further found that the deed granting Sarah the north half of the quarter section was valid as there was evidence that it had been made with William's consent, and as a result, he surrendered the homestead interest which he had enjoyed in that land. However, there was no evidence that Matney consented to the conveyance of the south half to Harriet's son. The court further found that since it was the north half of the land which contained the family dwelling, barn and other buildings, Matney, by consenting to the conveyance of the north half, also

surrendered his homestead interest in the south portion. In so concluding, the court relied upon *Peak v. Bank,* 58 Kan. 485, 49 Pac. 613 (1897), which had held that a dwelling house is an inseparable part of a homestead and without one, either actual or contemplated, there is no homestead.

On the basis of *Matney,* then, the conveyance to Tom and Jeanne Wells, which resulted in them receiving 24 acres free and clear of the judgment lien (see *Bellport v. Harder*), could conceivably extinguish Monica's homestead interest in the entire portion of the property. Such a conclusion is possible because Monica did transfer that portion of the property which contained the dilapidated house and the barn, and there was no evidence that she intended to move onto the remaining portion of the property to establish a homestead.

However, the interesting twist in this case is that Monica did intend to return to those 24 acres and live with her daughter and son-in-law after she retired. Although the property was not recorded in her name, she still had cosigned a note so that the Wells could begin construction of a home, and she had also obtained a building permit for such construction in her name. The trial court found that in the unusual circumstances here, Monica retained her homestead interest in the 24 acres conveyed to the Wells as she did intend to live there, despite the fact that the property was being conveyed to them, and consequently the entire tract remained impressed as her homestead. It has been held that the homestead exemption is not limited to husband and wife, but extends to groups bound together by ties of consanguinity living together as a household. *In re Estate of Dittemore,* 152 Kan. at 577. Therefore, despite the fact Monica and her son conveyed the 24 acres to her daughter and son-in-law, married adults, her intent to return and live on the site with them satisfied the continuing occupation requirement contained in K.S.A. 1979 Supp. 59-401.

The establishment of a homestead interest does not depend upon being the titleholder of the property in question. Those persons referred to in the homestead provisions of the Kansas Constitution and statutes may enjoy a homestead interest, but not an interest rising to the rank of an estate, *e.g., Matney v. Linn,* 59 Kan. at 618; *cf. Hicks v. Sage,* 104 Kan. 723, 180 Pac. 780 (1919). Therefore, the fact that Monica purportedly retained no interest in the 24 acres conveyed to her daughter and son-in-law need not

extinguish her homestead interest in the property. See *Moorhouse v. Crew,* 273 S.W.2d 654 (Tex. Civ. App. 1954). One might argue, of course, that the conveyance terminated her homestead interest and she would have to reestablish one. However, it does appear that steps were taken shortly after the conveyance to prepare the premises for a new home, *e.g.,* demolition of the old premises, obtaining a building permit and construction loans.

In summary, we find substantial competent evidence in the record to support the findings that the 70 acres was the homestead of Monica and Joseph Fink, commencing in December of 1940, and that Monica's departure from the property in 1968 was not voluntary. While in Leavenworth she constantly maintained an intention to eventually return to live on the property. Therefore, at the date of death of Joseph, Monica had a homestead interest in the entire 70-acre tract of land, and this interest exempted the real property from execution by the judgment creditor of her deceased husband.

Those factors cited by the judgment creditor which took place after Joseph's death (*i.e.,* Monica's plan not to return to the farm until her retirement, the transfer of the title to the 24 acres where the residence was located to her daughter and son-in-law, and the demolition of the homestead residence), were not sufficient to show abandonment of her homestead interest. Rather, substantial competent evidence supports the finding that Monica had also not abandoned her homestead interest after Joseph's death. Monica and her family had agreed that she would return to the property and reside in the new residence being constructed by Jeanne and Tom Wells. Further, Monica had participated in preparation of the new residence by obtaining a building permit in her name and cosigning the note for construction money loans.

The trial court findings that Monica Fink had a homestead interest in the 70 acres and that the defendant failed to prove abandonment of the homestead are supported by substantial competent evidence and in accord with K.S.A. 1979 Supp. 59-401.

The judgment is affirmed.