## In re Maynard W. SNOOK, Debtor.

### No. 89–4018–R.

United States District Court,
D. Kansas.

Nov. 15, 1991.

Charles T. Engel, Cosgrove, Webb & Oman, Topeka, Kan., for debtor.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from an order of the bankruptcy court. The appellant, The Farmers State Bank of Bucklin (Bank), appeals from the bankruptcy court's order which found that the appellee/debtor, Maynard Snook, was entitled to claim a homestead interest in 160 acres of land located in Ford County, Kansas. The Kansas Bankers Association (KBA) has filed an *amicus curiae* brief in support of the appellant's position.

The standards of review are well-settled. The bankruptcy court's findings of fact must be upheld unless they are clearly erroneous. Bankr.R. 8013; *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987). The bankruptcy court's legal determinations are reviewed *de novo. In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263, 1266 (10th Cir. 1988). Mixed questions of law and fact are also reviewed *de novo. Id.*

The issue raised in this appeal is whether the bankruptcy court correctly decided that the appellee was entitled to claim a homestead interest in 160 acres of land located in Ford County, Kansas. The bankruptcy court made the following findings of fact concerning the claimed homestead exemption:

Prior to 1986, debtor and his wife lived for over thirty years in a residence in the 1200 block of Mulberry Street in Ford, Kansas. The residence was titled in the name of debtor's children. Sometime in October 1986, debtor's wife, who had Alzheimer's disease, fell and broke her hip, which necessitated her move to a nursing home. At that time, debtor resolved to have a home of his own. In December 1986, debtor moved to a mobile home parked on a 160 acre tract he owned near Ford. The mobile home was owned by debtor's grandson, who, with his family, lived on the 160 acres rent free. Debtor moved a few of his personal belongings to the mobile home, but kept most in the home in Ford. Debtor also continued to pay taxes and utilities on the home in Ford.

Debtor spent most of his days visiting his wife. Debtor slept on the couch in the mobile home at night, ate most of his meals at a restaurant in Ford, but did laundry and kept his tools at the Ford house. Debtor's grandson paid debtor's gas bills for the mobile home, although he had the gas meter put in debtor's name. Debtor discussed purchase of the mobile home from the grandson but the two were never able to arrive at a price which debtor could afford.

On March 4, 1987, debtor filed a petition for relief under chapter 12 of the Bankruptcy Code. He listed his address as the mobile home address and claimed exempt the 160 acres as a homestead. He continued to sleep at the mobile home until sometime in May, when his wife moved to a different facility. He then alternated spending time between the house in Ford and the house of his son in the city where his wife had been moved.

In September 1987, debtor's family purchased him a new mobile home which was placed on the 160 acres. Near that time, debtor moved the remainder of his personal effects from the Ford house and recommenced sleeping there at the mobile home. A new gas meter was installed in debtor's name for the new trailer home in October. Later, debtor's grandson had the name on the gas bill for the old gas meter changed from debtor's name to his name. Debtor continues to pay for utilities and taxes on the Ford home and continues to use laundry facilities there. Debtor and other relatives use a shop on the Ford property for vehicle repairs, etc., when needed.

Based upon these findings, the bankruptcy court concluded that the debtor intended to abandon his home in Ford after his wife became incapacitated. The court further concluded that the debtor took the necessary steps to establish the mobile home on the 160 acres as his residence.

The Bank and the KBA contend that the bankruptcy court's findings of fact are clearly erroneous. Specifically, they assert that the record lacks any evidence to support the finding that the debtor intended to abandon his residence in Ford and establish a permanent residence on the 160 acres at the time he filed for bankruptcy. They assert that the evidence establishes, at best, a future intent by the debtor to establish a residence on the 160 acres.

■■■ Claims of homestead exemption in Kansas derive their existence from two sources: Kansas Constitution, Art. 15, § 9 and K.S.A. 60–2301. A homestead may include up to 160 acres of farming land or one acre of land located within a town or city. *Id.* A homestead can only attach to land "occupied as a residence" by the owner and/or the family of the owner. *Id.* Residence means "domicile," or "the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning." *Beard v. Montgomery Ward and Co.,* 215 Kan. 343, 524 P.2d 1159, 1164 (1974) (quoting K.S.A. 77–201, Twenty-third). In order to establish a homestead, a party must intend to occupy it as a homestead and must actually occupy it as a homestead within a reasonable time. *Security State Bank of Scott City v. Coberly,* 5 Kan. App.2d 691, 623 P.2d 544, 545 (1981). The owner's intentions are critical in determining whether a homestead has been established. *Smith v. McClintock,* 108 Kan. 833, 196 P. 1089, 1090 (1921). Once a homestead is established, two elements are required to find that the homestead has been abandoned: removal from the proper-

ty and an intent not to return. *In the Matter of the Estate of Fink,* 4 Kan. App.2d 523, 609 P.2d 211, 216 (1980). The issues of whether a homestead has been created and whether a homestead has been abandoned are issues of fact. *Id.* 609 P.2d at 215, 216.

In reviewing the findings of fact made by the bankruptcy court, we are guided by the following principles set forth in *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 400 (10th Cir.1986):

> When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). A trial court's findings may not be reversed if its perception of the evidence is logical or reasonable in light of the record. *Id.* [105 S.Ct.] at 1512. We have held in the bankruptcy context that "[t]he bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *In re Reid,* 757 F.2d [230] at 233–34 [(10th Cir. 1985)], quoting *Kansas Federal Credit Union v. Niemeier,* 227 F.2d 287, 291 (10th Cir.1955); *In re Pikes Peak Water Co.,* 779 F.2d 1456, 1458 (10th Cir.1985).

The court has carefully reviewed the record in this case. We find sufficient evidence in the record to support the bankruptcy court's finding that the debtor intended to abandon his home in Ford. The record contains testimony from the debtor that he intended to abandon the home in Ford in December 1986 and move to the 160 acres. His intentions were confirmed by his grandsons and his son. In addition, the debtor's family was willing to sell the house in Ford at any time after the debtor left it in December 1986. After moving in with his grandson in December 1986, the debtor began negotiations to acquire the trailer owned by his grandson located on the 160 acres. The negotiations were unsuccessful, but the debtor continued to attempt to find a trailer he could afford to move onto the property. The debtor left the grandson's trailer in May 1987 to care for his wife in another town. He subsequently returned to the 160 acres to live after his children purchased a trailer for his residence on the property. This evidence suggests that the bankruptcy court's findings were logical and reasonable. In reaching these determinations, we recognize that the record does contain some conflicting evidence. However, the bankruptcy court, as the trier of fact, has the duty to sort through conflicting facts, weigh the evidence and reach factual determinations. This court may reverse such determinations only if they are clearly erroneous and unsupported by the evidence.

Based upon these findings, we find that the debtor abandoned his home in Ford and established a homestead on the 160 acres at the time he filed for bankruptcy. The debtor did not intend to return to the home in Ford, and he intended to establish the 160 acres as a homestead. He subsequently did reside on the 160 acres within a reasonable time. Accordingly, the bankruptcy court properly concluded that the debtor was entitled to claim a homestead exemption in the 160 acres located in Ford County, Kansas.

IT IS THEREFORE ORDERED that the bankruptcy court's order of January 11, 1989 be hereby affirmed.

IT IS SO ORDERED.