(827 P.2d 78)

No. 66,799

STATE OF KANSAS, *Appellant*, v. GARY M. RATLEY, *Appellee*.

Opinion filed February 28, 1992.

*Kyle G. Smith*, assistant attorney general, of Kansas Bureau of Investigation, for appellant.

*Dennis W. Moore*, of Overland Park, for appellee.

Before PIERRON, P.J., LARSON, J., and C. FRED LORENTZ, District Judge, assigned.

LORENTZ, J.: This is an interlocutory appeal by the State of Kansas from the district court's suppression of evidence in a criminal case charging Gary M. Ratley with one count of pos-

session of marijuana with intent to sell, contrary to K.S.A. 1991 Supp. 65-4127b, a class C felony.

On June 30, 1990, after being physically abused by her husband, Gary M. Ratley, Janet Ratley took her child and left the parties' marital home for a "safe house." She planned to return to the marital home to pick up various personal possessions and did so on several occasions. On July 3, 1990, she met with authorities at the Allen County Sheriff's Office and signed a written consent for the search of the marital residence.

In the early afternoon of July 5, 1990, Special Agent Thomas Williams of the Kansas Bureau of Investigation (KBI), along with four other KBI agents and two officers from the sheriff's department, conducted a warrantless search of the residence based on Janet's written consent. During the search, 15 bags of marijuana were seized from inside the residence and approximately 19 cultivated marijuana plants were taken from the premises surrounding the residence. Gary was arrested later that same day. On the following day, Williams asked to talk to Gary. Gary indicated he did not wish to talk, and he was returned to the holding facility. A few minutes later, he returned and told Williams he wanted to talk. Following an explanation of his rights, Gary stated he understood them and then signed an "advice of rights" form and a "consent to waive rights" form. Gary subsequently confessed, entering into an agreement to tell the truth concerning his illegal activities in return for being charged with only one count of possession of marijuana with intent to sell.

On June 3, 1991, proceedings were held in district court on motions to suppress evidence, change venue, suppress the confession, and strike the information. The motions to change venue, suppress the confession, and strike the information were denied, and in a written order filed June 21, 1991, the trial court suppressed the evidence obtained from the consent search.

The State first contends the trial court erred in applying the wrong standard when it found Janet had abandoned the marital home by no longer occupying the premises jointly with Gary and therefore was not capable of giving a valid consent to search. In its argument the State suggests the correct standard is whether Janet had mutual authority or other sufficient relationship to the premises at the time she gave the consent to search.

"[T]he search of property, without warrant and without prob-able cause, but with proper consent voluntarily given is valid under the Fourth Amendment." *United States v. Matlock,* 415 U.S. 164, 165-66, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). "One of the exceptions to the requirement of a search warrant is a search made with consent or waiver voluntarily, intelligently and knowingly given." *State v. Pearson,* 234 Kan. 906, 920, 678 P.2d 605 (1984). Here, neither party challenges the consent as not being voluntarily, intelligently, or knowingly given. The issue is whether Janet had the authority to consent to the search.

Recent United States Supreme Court cases appear to be de-cided on whether the third party had common authority to con-sent, not on whether the third party jointly occupied the premises.

"[T]he consent of one who possesses *common authority* over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. . . . . [W]hen the prosecution seeks to justify a war-rantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed *common authority over or other sufficient relationship* to the premises or effects sought to be in-spected." (Emphasis added.) *Matlock,* 415 U.S. at 170-71.

"Common authority is, of course, not to be implied from the mere prop-erty interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, . . . but rests rather on *mutual use of the property by persons generally having joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (Emphasis added.) *Matlock,* 415 U.S. at 171 n.7.

All the cases relied on by Gary to establish a standard that the spouse must jointly occupy the residence were decided prior to *Matlock,* except *State v. Jakeway,* 221 Kan. 142, 558 P.2d 113 (1976). Those cases involved consent by a non-spousal third party. Although post-*Matlock, Jakeway* also involved non-spousal third-party consent and is distinguishable on that basis. 221 Kan. at 146. The United States Supreme Court decision in *Matlock,* sets the standard for a valid third-party consent as "common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 U.S. at 171.

Historically and legally, the relationship between a husband and wife has been treated differently than that between non-spouses, *i.e.*, landlord-tenant and homeowner-guest. See K.S.A. 23-201 *et seq.*, K.S.A. 60-423, K.S.A. 60-428, and K.S.A. 60-1601 *et seq.* The difference in treatment of spouses as opposed to non-spouses stems from their unique relationship which gives them a common authority and sufficient relationship arising from · the marital bonds affecting all aspects of their lives. While joint occupancy may be a factor to consider, it does not appear to be the overwhelming factor from which the common authority or sufficient relationship springs.

While the issue at hand has not been decided in Kansas, several post-*Matlock* cases in other jurisdictions have touched upon it. In *United States v. Long*, 524 F.2d 660 (9th Cir. 1975), the court upheld the validity of the estranged wife's consent, noting that although she did not live with her husband, she had left because of her fear of him, had left items at the house, had a right to control the house as joint owner, and had exercised that right when she accompanied agents to collect her things. 524 F.2d at 661. The court's decision appears to be based on her continued use of the property in that she had personal items there, had a joint right to control the property, and exercised her right of control when she retrieved items left there. 524 F.2d at 661 n.1. The fact that the agents went with her at the time she retrieved her possessions, rather than without the consenting party as is the case here, does not appear to be the controlling factor as Gary argues.

The court in *State v. Madrid*, 91 N.M. 375, 574 P.2d 594, *cert. denied* 91 N.M. 491 (1978), relying on *Matlock*, upheld the non-occupying spouse's consent to search defendant's residence based on the spouse's sufficient relationship to the premises. 91 N.M. at 378. This sufficient relationship was based on the spouse's right to occupy the premises, possession of a key to the premises which implied right of unlimited access, and use of the premises by leaving personal property there. In view of those facts, the defendant did not have an expectation of exclusive authority over the premises and his spouse's consent was valid. 91 N.M. at 378. Also in *Madrid*, the court noted that the spouse had left because of marital difficulties and, at the time of consent, had not lived

with the defendant for approximately five months. 91 N.M. at 377.

In *United States v. Crouthers,* 669 F.2d 635 (10th Cir. 1982), the court upheld the consent of the non-occupying spouse although she had left the apartment several weeks earlier and was living with her parents. 669 F.2d at 642-43. The court found that evidence of the extent to which she had moved out was lacking and held that it was apparent that she had not abandoned her marriage or the apartment completely as she still had a key to the apartment. 669 F.2d at 643. The court's decision was based on the inference that she still had control over the apartment, not on her jointly occupying it or her being there when the search was conducted. 669 F.2d at 643.

*Sullivan v. State,* 716 P.2d 684 (Okla. Crim. 1986), upheld the non-occupying spouse's consent under *Matlock's* common authority doctrine. In that case, the spouse moved out of the residence because of marital problems and alleged abuse. 716 P.2d at 686. The court found she had not abandoned the premises and still retained common authority over the residence because she retained a key to the premises, still had property in the house, and continued to exercise her common authority by her intent to return at a later time to remove her remaining property. 716 P.2d at 687.

In none of the foregoing cases did the court look at whether the spouse intended to return to live on the property. In those cases, the key was the existence of evidence of the spouse's common authority or a substantial relationship to the premises at the time of consent.

Kansas cases regarding abandonment of the homestead seem to reflect this continuing common authority. It has been held that "[i]n order to constitute an abandonment of the homestead the abandonment must be voluntary. Absence of a wife from the home occasioned by the husband's abuse does not constitute a voluntary abandonment of homestead rights." *Meech v. Grigsby,* 153 Kan. 784, 787, 113 P.2d 1091 (1941). See *In re Estate of Fink,* 4 Kan. App. 2d 523, 528-29, 609 P.2d 211, *rev. denied* 228 Kan. 806 (1980).

Evidence at trial showed that Janet and her son were at a safe house at the time she gave consent and that the divorce pro-

ceedings involved battery and abuse claims. At the time of the June 3, 1991, proceeding, she did not want to give her present address because of protection and safety reasons. These facts tend to show that she did not voluntarily abandon her homestead rights or rights over the use or access to the premises in question. Under *Meech*, the non-occupying spouse does not lose her common authority over the property. The sufficient relationship still exists.

There is also no evidence to show that Gary did anything such as changing locks, obtaining a restraining order, or removing Janet's possessions from the property in an effort to restrict her common authority or relationship to the property.

After reviewing *Matlock*, cases from other jurisdictions, and Kansas case law, we hold that in Kansas, spousal consent to search cases should be approached on a case-by-case basis using a common authority or sufficient relationship test. As noted in the cases discussed here, factors to be considered in determining if common authority or a sufficient relationship exists for a valid consent to search are (1) the non-occupying spouse's retention of a key to the premises, (2) the non-occupying spouse's access to the property, (3) changed locks, (4) the length of time the non-occupying spouse is away from the premises, (5) whether the non-occupying spouse left personal property on the premises, and (6) the reason for the non-occupying spouse's departure. In this case, Janet had access to the property, visited the premises to retrieve personal property she had left there, left the premises because of Gary's actions, was not in any way discouraged or restrained from returning to the property, and had only been gone three days when the consent to search was given. That is sufficient evidence to establish that she retained common authority or sufficient relationship to the property to give a valid consent, and it was error for the evidence obtained from the search following that consent to be suppressed.

The State next contends that the search was valid under the apparent authority exception as set out in *Illinois v. Rodriguez*, 497 U.S. 177, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990):

"The Constitution is no more violated when officers enter without a warrant because they *reasonably (though erroneously) believe* that the person who has consented to their entry is a resident of the premises, then it is violated

when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape. [Citation omitted.]

". . . As with other factual determinations bearing upon search and seizure, determination of consent to enter must 'be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief " ' that the consenting party had authority over the premises? [Citation omitted.]" (Emphasis added.) 111 L. Ed. 2d at 160-61.

According to the record, although Janet told Williams she was staying at the safe house on July 3, 1990, she never discussed with him her intention regarding returning to live on the property. At the time of the consent, Williams had no evidence that steps had been taken by the defendant to revoke Janet's authority or that Janet had given up all use or authority over the property. Williams was informed that the Ratleys were married and that Janet was presently at the safe house, but he did not know whether she ever intended to return to the marital home.

Under the facts herein, a reasonable person would be entitled to rely on Janet's apparent authority to consent to the search. We, therefore, hold that Kansas adopts the "apparent authority" rule, which makes valid a consent to search when the facts available to an officer would warrant a person of reasonable caution to believe the consenting party had authority over the premises to be searched.

Reversed.