In re Frank W. BENNETT, Jr. and
Ann Marie Bennett, Debtors.

**Bankruptcy No. 94–20638.**

United States Bankruptcy Court,
D. Maine.

Feb. 14, 1996.

Joseph L. Goodman, Portland, ME, for Ann Marie Bennett and Frank W. Bennett.

Joseph V. O'Donnell, Trustee, The Pilot Group, Portland, ME.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Frank and Ann Marie Bennett ("Bennetts" or "debtors") assert exemption rights in a parcel of largely unimproved real estate. The Chapter 7 trustee objects. For the reasons set forth below, I conclude that, although the debtors' claim to a "residence" exemption in the property rest on a strong emotional foundation, its legal foundation is too shaky to support it. The trustee's objection will be sustained.[1]

### Facts

In 1986 Mrs. Bennett's mother gave the debtors a house lot in Lisbon Falls, Maine, located next door to her own home.[2] Since then, the debtors have expended considerable time, money and energy working toward their goal of eventually constructing a home there. As of their bankruptcy filing, however, the goal remained unattained.

At the time of the gift transfer, the property's title was clouded. With the assistance of counsel, the Bennetts established clear record ownership, a process that took about three years.

Mr. Bennett, a logger, firewood dealer and sometimes builder, cleared the land himself. He has purchased, dumped and spread many truckloads of gravel and fill on it, attempting to bring the lot up to grade for building, a process that has been in progress for "years and years."[3] From 1987 to 1991 the Bennetts, at their own expense, had town sewer and water service extended to the property.[4]

Beginning in 1990, the Bennetts obtained estimates for construction of a variety of potential houses on the property. Starting with a proposed two-story home, they considered plans for increasingly modest structures. The debtors are now considering either building a house with the help of friends[5] or placing a mobile or modular home on the property.

Plans notwithstanding, no meaningful construction has been accomplished on the lot. As of August 1994, when the bankruptcy petition was filed, the only building on the property was a small, prefabricated tool shed. The debtors have stationed two pickup truck campers, sans pickups, on the land.

---

1. This memorandum sets forth findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052 and Fed.R.Civ.P. 52. Unless otherwise noted, all statutory citations are to the Bankruptcy Reform Act of 1978 (the "Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101, et seq.

2. The lot is titled in Ann Marie Bennett's name.

3. Because the property is located near municipal water supplies, local officials have informed Mr. Bennett that substantial filling and grading is required before building may commence.

4. See Ex. 8 (receipt dated Nov. 27, 1987 reflecting partial payment for street opening permit needed for sewer/water extensions); Ex. 18 (Town of Lisbon Water Department letter indicating water service construction complete to curb-stop). Mr. Bennett testified that the sewer extension alone cost approximately $4,800.00.

5. One such friend, David Bulmer, testified credibly that he was ready, willing and able to assist Mr. Bennett in building a house—just as soon as the Bennetts are able.

One camper affords temporary, rudimentary accommodations. The other serves as a workshop in which Mrs. Bennett repairs used and damaged toys and household goods for resale.

The Bennetts lived in one of the campers on the lot from April to August 1990 while they saved money so that they could rent an apartment. Since August 1990 they have resided in an apartment in Lisbon, Maine, not far from the Lisbon Falls property. In 1995, after the bankruptcy filing, Mr. Bennett spent several summer months living by himself in the camper. He has returned to the apartment.

The Bennetts do use the property regularly. Mr. Bennett splits wood on the lot. He parks an old truck there and hauls firewood, gravel and fill with it. During summer months, Mrs. Bennett conducts a running yard sale at the lot, selling the items she has repaired and refurbished. The debtors spend many, if not most, days on the property during summer months, returning to the apartment to sleep, shower and cook regular meals.[6]

The Bennetts still plan to reside permanently on their property, but their plans are far from certain. Mr. Bennett had no firm idea from whom he could purchase building supplies or a mobile home or how such purchases would be financed.[7] Mrs. Bennett opined that she and her husband "might" now, in light of their bankruptcy discharge, be able to borrow from her mother sufficient funds to build.[8]

## Discussion

### 1. What's Settled.

▐▌ The resolution of this dispute does not turn on the burden of proof.[9] Nor does it turn on resolving disputed facts.[10] Moreover, the parties agree that the extent and scope of the debtors' exemption rights are set by Maine's statutory residence exemption[11] (governing by way of opt-out).[12]

6. In warm weather, the Bennetts often take lunches to the lot and occasionally cook out there.

7. He admitted that the debtors' previous building plans had been frustrated by their inability to obtain financing.

8. She testified that they hadn't borrowed the money from family before because they "had too many bills."

9. As the party objecting to the debtors' exemption claim, the trustee bears the burden of proof. Fed.R.Bankr.P. 4003(c). But the trustee has rebutted the prima facie effect of the debtors' residence exemption claim by virtue of the uncontroverted fact that the debtors did not reside at the subject property when they filed bankruptcy. *See In re Cole,* 185 B.R. 95, 96 (Bankr.D.Me. 1995). Accordingly, the burden of producing evidence in support of the exemption claim shifts to the debtors. *Id.* at 96–97 (citing *In re Hodgson,* 167 B.R. 945, 950 (D.Kan.1994)).

 *Cole* held that the prima facie effect of the exemption claim under Rule 4003(c) was rebutted when the objector established that the debtor *never resided* at the property. Because analyzing the exemption claim focuses on the property's status on the date that the petition is filed, *In re Tardiff,* 38 B.R. 974, 976 (Bankr.D.Me.1984); *In re Grindal,* 30 B.R. 651, 652 (Bankr.D.Me.1983), it is appropriate to hold that a showing of *non-occupancy* at *bankruptcy* suffices in this regard. To do so permits application of the burden-shifting doctrine in appropriate cases, both those in which the debtor may have occupied the property in the past and those in which the debtor expresses an intention to reside on the property (for the first time) in the future.

10. The evidence is essentially uncontroverted. The debtors testified credibly in all respects.

11. Me.Rev.Stat.Ann. tit. 14, § 4422(1)(A), as effective on the date of the debtors' bankruptcy, provides as follows:

 The following property is exempt from attachment and execution, except to the extent that it has been fraudulently conveyed by the debtor.
 1. **Residence.** The exemption of a debtor's residence is subject to this subsection:
 A. Except as provided in paragraph B, the debtor's aggregate interest, not to exceed $12,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, provided that if minor dependents of the debtor have their principal place of residence with the debtor, the debtor's aggregate interest may not exceed $25,000.00 and provided further that if the debtor's interest is held jointly with any other person or persons, the exemption may not exceed in value the lesser of $12,500 or the product of the debtor's fractional share times $25,000.
 Me.Rev.Stat.Ann. tit. 14, § 4422(1)(A) (West 1964 & Supp.1995).

12. *See* 11 U.S.C. § 522(b) (1993) (providing for state opt-out); Me.Rev.Stat.Ann. tit. 14, § 4426 (West 1964 & Supp.1995) (exercising opt-out).

█ The way in which the exemption statute is to be construed and applied (liberally, in favor of the fresh-start policy) is clear.[13] And the proposition that actual, physical occupancy of the premises is "neither necessary nor sufficient" to sustain the exemption claim is beyond dispute.[14] In other words, the principle of "constructive occupancy" may sustain a residence exemption claim in appropriate circumstances, notwithstanding the fact that the debtor(s) or their dependant(s) did not live on the property on the bankruptcy date.[15]

## 2. What's Not.

█ The rub here comes in applying the law to the facts. This court recently observed that cases sustaining a residence exemption in property that debtors did not occupy at bankruptcy "all involve situations where the debtor actually resided on the property at one time, and, although not resident there on the petition date, demonstrated an intention to return." In re Cole, 185 B.R. at 97 (citing cases). Sustaining the trustee's objection to the exemption claim in Cole, a case in which the debtor was without any meaningful plans to move to property she had never before occupied and in which she

had made a few historical improvements (installation of a septic system about one year before bankruptcy), I did not rule out the possibility that there may exist a case in which a debtor might sustain a residence exemption in never-before-occupied property, but observed:

> Even if I were to accept (for the moment) the proposition that a residence exemption can be established without prior occupancy, [the debtor] has demonstrated nothing more than a vague intention to live on the ... property and has shown no present plans or tangible, contemporary preparations to move there. That is not enough.

In re Cole, 185 B.R. at 98 (citing cases).

█ When evaluating a constructive occupancy based residence exemption claim, assaying a debtor's intention to occupy is an essential inquiry. In re Grindal, 30 B.R. at 653; see also In re Snook, 134 B.R. 424, 425 (D.Kan.1991); In re Eckols, 63 B.R. at 527; 2 Norton § 46:10 at 46–17; 3 Collier ¶ 522.10 at 522–54. The Bennetts have, through actions spanning nearly ten years, objectively demonstrated their intention (someday) to make the Lisbon Falls lot their home.[16]

█ But examining intent is not the exclusive inquiry. A debtor must also demonstrate a meaningful ability to occupy the

---

13. See In re Cole, 185 B.R. at 97 (citing cases).

14. In re Grindal, 30 B.R. 651, 653; see also In re Cole, 185 B.R. at 97 (citing authorities).

15. The constructive occupancy doctrine has been explained as follows:

> Given the purpose of the homestead exemption, a finding that the debtors actually occupied the homestead on the filing date is neither necessary nor sufficient to qualify for the exemption. Occupancy may be constructive as well as actual. The primary factor is the debtor's intention on the filing date. A debtor who does not actually occupy the homestead on the filing date, but who intends to return when circumstances permit, may qualify for the exemption. Conversely, a debtor who actually occupies the homestead on the filing date, but who intends to sell it and not purchase another home, may not qualify for the exemption.

In re Grindal, 30 B.R. at 653 (citations omitted). Hence, a debtor's summer home would not qualify for the exemption because this is not the place

he or she actually occupies as a home. But a debtor who is temporarily absent on the filing date, perhaps for health reasons, employment obligations, vacation or divorce proceedings, would not lose the exemption. In re Dodge, 138 B.R. 602, 607 (Bankr.E.D.Cal.1992); In re Yau, 115 B.R. 245, 249 (Bankr.C.D.Cal.1990); 2 Norton Bankruptcy Law and Practice 2d § 46:10 at 46–17 (1994) (citing In re Tomko, 87 B.R. 372 (Bankr.E.D.Pa.1988); In re Johnson, 61 B.R. 858, 865 (Bankr.D.S.D.1986); In re Eckols, 63 B.R. 523 (Bankr.D.N.H.1986)) [hereinafter "Norton"]; 3 King, Collier on Bankruptcy ¶ 522.10 at 522–53 (15th ed. 1995) [hereinafter "Collier"].

16. A bare assertion of subjective intention to reside on property will not satisfy the requirement that the debtors prove an intention to occupy property that they did not occupy on the date of bankruptcy. A debtor's expression of intention must be buttressed by "demonstrative, tangible, physical evidence" consistent with that intention. In re Cottingim, 7 B.R. at 58; In re Winegarten, 101 B.R. at 707; see In re Cole, 185 B.R. at 97–98.

property imminently or within a reasonable time. *See, e.g., Hillock Homes, Inc. v. Claflin (In re Claflin)*, 761 F.2d 1088, 1091 (5th Cir.1985) (Texas homestead exemption) (debtors must show (1) intention to occupy and (2) ability to control time of occupation); *In re Dennison*, 129 B.R. 609, 610 (Bankr. E.D.Mo.1991) (Missouri homestead exemption) (exemption requires intent to occupy and "ability to control or strongly influence" time of occupation); *In re Winegarten*, 101 B.R. 705, 707 (Bankr.E.D.Okl.1989) (Oklahoma homestead exemption) (intent to occupy and actual occupancy "without unreasonable delay"); *In re Cottingim*, 7 B.R. 56, 58 (Bankr.S.D.Ohio 1980) (Ohio exemption) (present intent to occupy at a definite date); *see also In re Crippen*, 36 B.R. 7, 8 (Bankr. E.D.Mo.1983) (Missouri homestead exemption) (intent and "reasonable possibility" of use as a homestead).[17] It is on this point that the Bennetts' exemption claim fails.[18]

The Bennetts can demonstrate no ability to occupy their Lisbon Falls lot as a residence imminently or without unreasonable delay after the filing of their bankruptcy. Indeed, it is now over a year since they filed for relief and, although they have continued to add fill to the property and have continued to use it for various nonresidential purposes, they have made no meaningful progress actually residing there.

 A "contingent, future intent to move" to the property is not enough. *In re Claflin*, 761 F.2d at 1091. The Maine statute provides an exemption in property that a debtor "uses as a residence."[19] Even liberally construed, employing the constructive occupancy principle, it does not extend so far as the "attempted" or the "hoped for" residence. The state's exemption framework prefers homeowners over non-homeowners, including aspiring homeowners. *In re Grindal*, 30 B.R. at 653. Thus, it cannot aid the debtors here.[20]

## Conclusion

For the reasons set forth above, the trustee's objection to the debtors' claim of exemption will be sustained. A separate order consistent with this memorandum shall enter forthwith.

---

17. Reference to cases applying other states' "homestead" and "residence" exemptions is instructive. In considering § 522(d)(1), after which Me.Rev.Stat.Ann. tit. 14, § 4422(1)(A) is modeled, Congress referred to common characteristics of the historical exemptions for both homesteads and residences. *See In re Brent*, 68 B.R. 893, 895 (Bankr.D.Vt.1987); *see also In re Bates*, 176 B.R. 104, 106 (Bankr.D.Me.1994).

18. Today's decision does not require me to hold that a homestead or residence exemption in unimproved land (*i.e.* land without a habitable, residential structure) is legally unsustainable under any circumstances. The reported cases addressing such claims have, however, rejected them. *See In re Cole*, 185 B.R. at 98; *In re Dennison*, 129 B.R. at 611; *In re Crippen*, 36 B.R. at 8–9; *In re Cottingim*, 7 B.R. at 59.

19. *Cf.* Me.Rev.Stat.Ann. tit. 21–A, § 112(1)(A) (West 1964 & Supp.1995).

20. This result is not as bad for the Bennetts as it might seem. If they do, indeed, have the ability to obtain funds that might be invested in a residence, those funds might first be utilized to purchase the property from the estate. Then, with the benefit of their bankruptcy discharge, the Bennetts may go forward, unencumbered by past debt. Purchasing the non-exempt asset from the estate, or locating and purchasing another building lot, is a fair price tag for gaining a discharge of debts that would otherwise negate any practical possibility of building or buying a home. *See generally Crippen*, 36 B.R. at 9–10 (noting that exemptions should not be created simply to avoid creditors' claims); *In re Baxt*, 188 B.R. 322, 323 (Bankr.S.D.Fla.1995).